**TEXAS POWER & LIGHT COMPANY, Appellant,**

v.

**Cullen P. PETERSON, Appellee.**

No. 3294.

Court of Civil Appeals of Texas, Waco.

Jan. 19, 1956.

Rehearing Denied March 22, 1956.

Bryan, Maxwell, Bryan & Wilson, Waco, Burford, Ryburn, Hincks & Ford, Dallas, for appellant.

Fitzpatrick & Fitzpatrick, Waco, for appellee.

TIREY, Justice.

Appellee brought this action for injuries received as the result of his lifting a metallic pipe into contact with a transmission line of appellant. He grounded his cause on the negligence of appellant in the construction and maintenance of its lines on both statutory and common law grounds. The court overruled defendant's motion for instructed verdict, and the issues, absent the burden of proof clause, and the jury's answers thereto are substantially as follows:

1. At what height did the defendant construct and maintain its power lines over the driveway of the premises of plaintiff? Answer: Lower line 15 feet. (No answer as to the upper line.)

2. Was the construction and maintenance of said power lines at the height found by you less than that provided by the National Electrical Safety Code? Answer: Yes.

3. Was the maintenance of the power lines at such height over the driveway and extending over what is termed the point of contact negligence? Answer: Yes.

4. Was the maintenance of the power lines at the height you have found a proximate cause of the plaintiff's injuries? Answer: Yes.

5. Was the failure of the defendant to have its transmission lines insulated at the time and place negligence? Answer: No.

7. Did the plaintiff suffer and sustain damages as a direct and proximate result of the negligence of defendant? Answer: Yes.

8. What sum of money would compensate the plaintiff for the damages that you believe he has sustained proximately caused by the negligence of defendant? Answer: $11,000.00.

9. Did the plaintiff contact the wires in question with a metal on the occasion in question? Answer: Yes.

10. Was the act on the part of the plaintiff in contacting the wires in question with a metal pipe negligence? Answer: No.

13. Did the plaintiff fail to notify the Texas Power & Light Company on the occasion in question that he intended to do work on the well which would be dangerous because of the presence of the electric wires in the vicinity? Answer: Yes.

14. Was the failure of the plaintiff to notify the defendant that he intended to do work on the well which would be dangerous because of the presence of the electric lines in that vicinity negligence? Answer: No.

16. Did the plaintiff fail to keep a proper lookout for electric wires in the vicinity where he was working immediately preceding the time the pipe contacted the lines in question? Answer: Yes.

17. Was the failure of the plaintiff to keep a proper lookout for the electric wires where he was working negligence? Answer: No.

The court overruled defendant's motion for judgment non obstante veredicto and granted plaintiff's motion for judgment in accordance with the award made by the jury.

The judgment is assailed on nine points. They are substantially:

1. The error of the court in failing to sustain appellant's motion for instructed verdict and its motion for judgment non obstante veredicto, because the undisputed evidence shows that the transmission lines at the point contacted were above the height required by law and appellant had no notice or knowledge of any change of conditions at the location creating a dangerous condition;

2. Because the judgment is based upon an incomplete verdict that does not support the judgment;

3. Because Issue No. 3 of the court's main charge is erroneous in that it constitutes a duplicitous issue;

4, 5, 6, 7 and 8. The court erred in entering judgment based upon answer of the jury to Issues 1, 2, 3 and 4: (a) for the reason that the height of the lower wire could not constitute a proximate cause of the injuries sustained by appellee because the undisputed evidence shows that such wire was a neutral wire and carried no electric energy and could not have constituted a proximate cause of said injuries; (b) for the reason that in response to Special Issue No. 1 the jury found only the height of the lower wire over the driveway and the finding of the jury that the maintenance of said wire at such height was negligence and a proximate cause of the injuries sustained by appellees has no support of a fact finding as to such height insofar as such finding relates to the upper wire; (c) for the reason that the maintenance of such wires at such height (meaning 15 feet) over the point of contact was negligence and a proximate cause for the reason that said finding has no support in the evidence in that the undisputed evidence shows that both the lower and upper wires were maintained at a height in excess of 15 feet at the point of contact; (d) for the reason that there is no evidence that the maintenance of the wires at less than statutory height over the driveway was a proximate cause of appellee's injuries; (e) for the reason that there is no evidence that the height of the wire at the point of contact constituted a proximate cause of appellee's injuries;

9. For failing to sustain appellant's motion for instructed verdict because appellee was guilty of contributory negligence as a matter of law.

A statement is necessary.

Testimony was tendered to the effect that in 1951 appellee purchased 3.6 acres of land near Bellmead, Texas, which was in an unincorporated area; at the time of such purchase there were two electric transmission lines extending across his property from the east to the west; appellee made no objection to such lines; there was no change in the condition of the transmission lines at any time relevant to the time under consideration; a water well was located in appellee's front yard and it had been there for a number of years and it had not been used for at least 3½ years prior to the accident; the well was covered over by a cement slab that was about flush with the ground and grass grew over the top of this cement slab and the surface was such that appellee mowed over the top of his well, and prior to the time complained of the well for all purposes was abandoned; on Thursday, July 22nd, appellee decided to re-activate such well and use the water to irrigate his land; in order to do so he purchased a pump from Sears-Roebuck and it was delivered to his house on the same day; on Saturday morning, July 24, 1955 appellee was attempting to adjust the pump in the well and, with the assistance of a neighbor, he pulled the metal pipe out of the well because it would not work properly, and while they were so engaged in lifting the pipe out of the well it contacted appellee's power line which was located approximately above the well; in this manner appellee received the electrical shock for which he was awarded damages; appellant had no notice that the abandoned well had been activated or was about to be activated or that a dangerous condition had been created by appellee as a result of his action in installing and adjusting the pump. Evidence was tendered to the effect that the power lines above the well and at the point of contact were above the height required by law.

In appellant's brief we find this statement:

"Article 1436a, Texas Revised Civil Statutes, regulates the clearance of electric transmission and distribution lines and provides that all lines for the transmission and distribution of electric energy shall be constructed, operated and maintained as to clear-

ances in accordance with the National Electrical Safety Code as published in March, 1948, by the National Bureau of Standards in Book 30. Said code provides that at the point where appellee contacted appellant's lines, the height required of the lowest wire, which was the neutral wire and carried no electric energy, was 14 feet 10 inches. The height required of the upper line which was a K V line and carried 7200 volts of electricity was, according to said code, 16 feet 8 inches. * * * The evidence as to the height of the transmission lines most favorable to appellee was that presented by Frank Fitzpatrick, Sr., one of the attorneys of record for the appellee. Mr. Fitzpatrick testified that he measured the height of said lines at approximately the point of contact and the height of the lower line, the neutral was 15 feet 4 inches. He further testified that the height of the upper line, the K V, was 18 feet 6 inches. * * * Mr. C. H. Uran, licensed state land surveyor, testified the height of the lower line at the exact point of contact was 16 feet 2 inches and the height of the upper line, the K V line, was 19 feet 5 inches. * * * Taking the evidence most favorable to the appellee, the evidence shows that at the point of contact, the lower neutral wire was 1 foot 6 inches above the height required by law and the clearance of the upper K V line was 1 foot 10 inches above that required by law."

The foregoing statement taken from appellant's brief is not challenged. See Rule 419, T.R.C.P.

Appellee testified to the effect that the tree near the well was an elm; that the well was curbed with concrete flush with the ground and was covered over with concrete and that grass grew partly over the concrete and that in mowing his lawn he used a power mower and ran it over the concrete slab over the well; that he installed the pump on Thursday and then waited until Saturday to adjust it, and on Saturday morning he pulled the pipe out of the well to see what caused the pump not to work; that he was unable to pull it out by himself and that he got one of the neighbor boys to help him and that "we started pulling the pipe out of the well and just as we cleared the hole coming out of the well, that is the last I remembered. I woke up on the ground"; that the pipe was 21 feet 3 inches and that the measurement included the valve attached to it.

"Q. Now, when you pulled it up, just tell the jury what you did with reference to how far, if any, you pulled it above the curb line? A. Well, the other boy was pulling over me, and I was pulling out of the well, just hand over hand, like that (indicating) and then when the pipe came out of the well we set it over—it looked like an inch or two before we cleared the curb, and like I said awhile ago, that's the last I remember anything. * * *

"Q. Was that well, when you bought the place, in the same condition as it was in just prior to the time you started activating this well in the latter part of July, 1954? A. That's right, nothing had been changed. * * *

"Q. Did you all do anything at that time except stick the pipe down in the well and then put your pump in place and attach the pipe to the pump? A. That's all we did. * * *

"Q. * * * you knew that the Texas Power & Light Company had an easement for those lines out there, didn't you? * * * You never made any objection to the presence of those lines there? A. Well, I didn't have no occasion.

"Q. That's right; in other words, the lines were there—A. Yes.

"Q. And you never raised any objection about the presence of the lines. A. Well, I couldn't have done nothing about it even if I had.

"Q. I am just asking you if you made any objections to anybody? A. No, sir. * * *

"Q. At the time you pulled the pipe out of the well on the occasion in question did you pull it right straight up? A. Well, it was about a 5 x 6 hole there, an oval hole, the hole I was speaking of awhile ago. When I was coming out of the well I was bending over and the other boy was over me, and the pipe couldn't hardly come out no other way except straight up.

"Q. Except straight up. Except whatever bend there might have been in it, it was right over, or approximately right over the pump as it stuck up. Is that right? A. That's right. It could have wiggled either way a little bit.

"Q. Do you think it could have wiggled very far? A. Well, it probably could have, the top of it. We had hold of the bottom of it, as long as we were coming out of the bottom of the well with it. * * *

"Q. As you started to pull the pipe out of the well on that morning, did you look up into the tree to see if you could see these wires? A. No, sir, I didn't look up.

"Q. You knew the wires were there? A. Yes, I knew they were there, you can't live around anything and not know it's there, but I didn't pay no attention to it. * * *

"Q. At the time you got ready to install this pipe in the well, or got ready to activate the well, or at the time you got ready to pull the pipe out of the well, did you notify Texas Power & Light Company or any of its employees that you were fixing to do that work? A. No, I didn't because I thought I owned the place and if I wanted to improve I could do what I pleased; you can buy electric pumps anywhere you want to.

"Q. But you did not notify the company or anybody connected with the company of your intentions? A. No, sir, I didn't know I was supposed to, nobody told me.

"Mr. Peterson you knew that an electric light line would shock you if you came in contact with it, didn't you? A. Oh, yes, I knew that.

"Q. And you knew that if you touched it with a metallic object and were standing on the ground or had any other ground that it would shock you. You knew that, didn't you? A. Right."

Going back to appellant's Points 1, 2, 4, 5, 6 and 7, did the appellee carry his burden of showing that the transmission lines at the point contacted were below the height required by law and that appellant had notice of the changed conditions at the location where the accident occurred creating a dangerous condition? It is our view that appellee did not. First of all, the jury failed to find the height of the K V line that carried the energy, and since there was a dispute between the appellee and appellant as to the height of this line, and since it was the line that carried the energy, its height was an ultimate issue to be determined by the jury, and no implied finding could be indulged by the trial court. See Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, points 4–5, at pages 84, 85. See also Austin v. Austin, 143 Tex. 29, 182 S.W.2d 355; also 36A Texas Digest, Trial, ⊕351(2), subheading Findings by Court in General; Rule 279, T.R.C.P. It is clear to us that unless appellee showed that appellant was maintaining its transmission lines contra to the provisions of the applicable statute, his statutory grounds of negligence must fail. It is also our view that since the lines were there when the appellee purchased the property and he was familiar with their location, and the position of the lines being open and obvious, and since it is without dispute that appellee did not give the Power Company notice that he was going to install a pump and that in so doing it might be necessary for him to raise the metal pipe for adjustments, and since, knowing the wires were there in close proximity to the well, appellee proceeded to raise the pipe without paying any attention to the wires

and bring the pipe in contact with the live wire, appellee's failure to pay attention to the wires convicted him of contributory negligence, and his action in so doing constituted a proximate cause of his receiving the shock. Going back to the undisputed testimony and appellee's own recitation of the way the accident happened, the light wires were across and over appellee's property and he knew they were there and he had lived with them since he acquired the property in 1951; Wilson v. Texas Electric Service Co., Tex.Civ.App., 265 S.W.2d 624, n. r. e.; City of Greenville v. Pitts, 102 Tex. 1, 107 S.W. 50, 51, 14 L.R.A.,N.S., 979, no writ history; 41 T.J. 547 et sub.; that when he decided to install the well in the pump he gave no notice to the Power Company that he was going to install the pump and did not do so because he said in effect that he owned the property and did not have to ask permission of the Power Company; that he knew one of the wires carried electric energy and he knew if he touched that wire with a metal substance he would get a shock; that he and his helper raised the pipe from the well, lifted it approximately straight up, and although he knew the wire was there he paid no attention to it. In other words, appellee failed to use any precaution to protect himself from the electric shock, or, stated differently, appellee, by his own admission, failed to use and exercise ordinary care for his own safety. It is our view that appellee's recitation of the way the accident happened brings himself within the doctrine announced by this court in J. R. Watkins Co. v. King, Tex.Civ.App., 83 S.W.2d 405, 407, no writ history, wherein the court said:

"Where a party testifies to positive and definite facts which, if true, would defeat his right to recover or conclusively show his liability, and such statements are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, it has generally been held that he is conclusively bound by his own testimony and cannot successfully complain if he is nonsuited or the court directs a verdict against him."

See Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W.2d 767, point at page 771, 145 S.W.2d 569; La Fleaur v. Kinard, Tex. Civ.App., 161 S.W.2d 144, err. ref. w.o.m.; Leonard v. Smith, Tex.Civ.App., 186 S.W. 2d 284, no writ history; Garza v. Garza, Tex.Civ.App., 191 S.W.2d 767, no writ history; City of Waco v. Thralls, Tex.Civ. App., 172 S.W.2d 142, writ ref. w.o.m. See also Texas & N. O. Ry. Co. v. Pool, Tex.Civ.App., 263 S.W.2d 582, point 1, at page 586, no writ history, and cases there collated; Bergeron v. City of Pt. Arthur, Tex.Civ.App., 264 S.W.2d 769, point at page 775, n. r. e.

We think appellee's cause must fail also because he failed to carry the burden as to proximate cause. This for the reason that the essential element of proximate cause is the foreseeability of the injury or a similar injury, because in order to constitute the proximate cause of an injury, the injury must be the natural and probable result of the negligent act or omission. Since the jury failed to convict the appellant of having its energy line constructed and maintained in violation of its statutory duty, and since appellant had no notice of the well and of appellee's intention to install the pump and re-activate the well for irrigation purposes, it could not under all the facts and surrounding circumstances, which are uncontroverted, foresee that the appellee would attempt to re-activate the well by the installation of the water pump, and that in so doing he would have trouble and would have to raise the main pipe of the pump from the well after such installation, and that in so doing he would not pay any attention to the wires that he knew to be strung overhead and bring the pipe in contact with the electric energized wire. We think the foregoing views are in accord with the rule announced in Texas & P. Railway Co. v. Bigham, 90 Tex. 223, 38 S.W. 162, and City of Dallas v. Maxwell, Tex.Com.App. opinion approved by S.Ct., 248 S.W. 667, 27 A.L.R. 927; also West Texas Utilities Co. v. Dunlap, Tex. Civ.App., 175 S.W.2d 749, no writ history,

In Havens v. Dallas Power & Light Co., Tex.Civ.App., 256 S.W.2d 689, 691, we find this statement of the rule: "Where the defect or dangerous condition causing the injury does not arise from the negligence of the Power Company, its liability turns on whether it knew, or by the exercise of reasonable diligence should have known of the situation in time to have avoided the injury." Citing 29 C.J.S., Electricity, § 47, p. 596. We think our facts here stated are supported also by the opinion of our Supreme Court in Brush Electric Light & Power Co. v. Lefevre, 93 Tex. 604, 57 S.W. 640, 49 L.R.A. 771. See also Hill v. Dallas Railway & Terminal Co., Tex.Civ. App., 235 S.W.2d 522, n. r. e.; West Texas Utilities Co. v. Dunlap, supra.

■ We are of the further view that the court erred in failing to sustain appellant's objection to Special Issue No. 3. Issue No 3 is: "Do you find from a preponderance of the evidence, if any, that the maintenance of said power line at such height over the driveway of the plaintiff, and extending over what is termed the point of contact was negligence, as that term has been herein defined?" and the jury answered "Yes." In appellant's brief we find this discussion:

"By the above issue, the jury was called upon to answer two definite and distinct inquiries of fact, to-wit: (1) whether the maintenance of the lines at the driveway at the height found by the jury was negligence; (2) whether the maintenance of the lines at the point of contact at the height found by the jury was negligence."

We are in accord with this view. The foregoing matter was called to the court's attention in the foregoing manner and should have been sustained.

■ We think the rule in Texas is: "A duty being imposed by statute, a breach thereof, resulting in an injury, of the character which the statute sought to prevent, to one for whose advantage it was enacted, itself constitutes negligence without reference to the degree of care exercised, or of reasonable anticipation of an injury. The performance of the duty does not depend upon, nor is it controlled by, surrounding circumstances. One breaching a statutory duty cannot be heard to say that its breach was consonant with any degree of care. The statute itself charges one that its violation will result in an injury of the character sought to be prevented in its enactment." See Texas & P. R. Co. v. Baker, Tex.Com.App., holding approved by S.Ct., 215 S.W. 556, 557, point 2. In the case at bar the jury failed to find the height of the wire carrying the power, and the evidence being controverted as to the height, and the jury having failed to answer, the court was without authority to make an implied finding as to the height of the wire, and under the record here made the verdict is insufficient to sustain a judgment on statutory negligence against appellant. The doctrine announced in the Baker case, supra, was followed by our Supreme Court in Mundy v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587, points 3–4, at page 590, and East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613.

■ Since the jury failed to find that the appellant was maintaining its energy carrying wire across the premises at the point where appellee received his injuries in violation of its statutory duty, the verdict is insufficient to sustain the judgment on the alleged statutory grounds of negligence. It is true that there is no showing that either side requested the court to send the jury back to answer the height of the energy carrying wire, yet we are of the view that under the rule of our Supreme Court in Texas & P. R. Co. v. Baker, supra, that justice will be better served by reversing and remanding this cause.

Because of the views here expressed, each of appellant's points insofar as they are in harmony with this opinion are sustained; otherwise, they are overruled.

Reversed and remanded.