**TEXAS POWER & LIGHT COMPANY, Appellant,**

v.

**Bobby L. JACOBS, Appellee.**

**No. 3607.**

Court of Civil Appeals of Texas. Waco.

March 19, 1959.

Rehearing Denied April 9, 1959.

Roe, Ralston & McWilliams, Corsicana, Burford, Ryburn & Ford, Dallas, for appellant.

Dawson & Dawson, Corsicana, Caldwell, Baker, Jordan & Hill, Dallas, for appellee.

TIREY, Justice.

Appellee brought this action for injuries received as a result of his attempt to lift with a board one of the defendant's electric wires which was constructed and maintained across a public road in order to permit the passage of a house being moved on such road and under the wire. He grounded his cause of action on the negligence of the light company in the construction and maintenance of its lines, on both statutory and common-law grounds. At the conclusion of the evidence the Court overruled Defendant's Motion for Instructed Verdict, and the Jury in its verdict found substantially as follows:

(1, 2 and 3) That the lower electric wire was not effectively insulated, and that it was negligence, and that it was a proximate cause of the injuries to appellee;

(3-A, 3-B and 3-C) That the upper electric wire was not effectively insulated and that it was negligence and a proximate cause of the injuries to appellee;

(4, 5 and 6) That the maintenance of the lower electric line at a height of less than 22 feet was a proximate cause of the injuries, and that such maintenance was closer to the surface of the roadway than an ordinary prudent person would have maintained it under the same or similar circumstances, and that such maintenance was a proximate cause of the accident;

(7 and 8) That defendant maintained its upper electric wire closer to the surface of the roadway than an ordinary prudent person would have done under the same or similar circumstances, and that such maintenance was the proximate cause of the accident;

(9) That the lower electric wire at the time was used in the transmission of electricity;

(10) That the sum of $26,600 would reasonably compensate appellee;

(11 and 12) That the sum of $3,900 would reasonably compensate appellee for medi-

cal expenses, and that the sum of $2,000 if paid in cash would reasonably compensate appellee for his medical expenses that he will reasonably and probably incur in the future;

(13 and 15) That appellee did not fail to keep a proper lookout for electric wires, and that the act of appellee in attempting to move the lower electric wire by the use of a stick was not negligence;

(17) That plaintiff's failure to notify the light company that he intended to move a house under its lines at the place in question was not negligence;

(19) That the act of appellee of being on the house at the time when such house was in such close proximity to the lower electric line was not negligence;

(20-A) That the act of appellee being on the house when such house was in close proximity to the lower electric line was not negligence;

(21) That appellee did not place himself in a position of danger;

(24) That the accident was not unavoidable;

(25) That the act of the driver of the truck which was towing the house underneath the electric lines was not the sole proximate cause of the accident.

The Court overruled the light company's Motion for Judgment Non Obstante Veredicto and granted plaintiff's Motion for Judgment, and in the Judgment we find substantially this recital:

It appearing to the Court that the Jury has awarded the sum of $3,900 for reasonable and necessary medical expenses incurred in the past, which award is in the sum of $85.55 in excess of that amount for such expenses supported by the evidence, and that such award should, therefore, be reduced to the extent of $85.55, and decreed that plaintiff have judgment against the light company for the sum of $32,414.45,

with interest at the rate of 6% per annum from date of Judgment, together with costs. The light company seasonably filed its amended motion for new trial and it being overruled perfected its appeal to this Court.

The Judgment is assailed on seven Ponts, they are substantially to the effect that the Court erred:

1. In submitting Issue No. 4, and entering Judgment based on the jury's answers thereto because there was no finding by the' jury that the maintenance of the lower line at a height of less than 22 feet was negligence, and the uncontroverted evidence showed that such line was maintained at a height in excess of that required by statute.

2. In overruling the light company's Motion for Instructed Verdict and Motion for Judgment Non Obstante Veredicto and in entering judgment for appellee, because the undisputed evidence shows that appellant's distribution lines at the time and place in question were above the height required by law, and appellant had no notice or knowledge of any change of conditions at said location creating a dangerous situation.

3. In submitting Issues Numbers 1, 2, 3, 4, 5 and 6, and entering judgment based on the jury's answers thereto, because the condition of insulation or height of said lower line could not constitute a proximate cause of the injuries sustained by appellee in that the undisputed evidence shows that such line was a neutral line and carried no electrical energy.

4. In submitting Issues Numbers 5 and 6 and entering judgment based on the jury's answers thereto, because the undisputed evidence showed that appellant maintained its lower line in excess of 18 feet as required by statute, and common-law negligence should not have been submitted.

5. In submitting Special Issues Numbers 7 and 8 and entering Judgment based on the jury's answers thereto because the undisputed evidence showed that appellant maintained its upper line in excess of statutory

requirements, and common-law negligence should not have been submitted.

6. In entering Judgment based upon the jury's answers to Special Issues Numbers 1, 2, 3, 3–A, 3–B, and 3–C, which answers were to the effect that the distribution lines of appellant were not effectively insulated because such findings are against the overwhelming weight and degree of credible testimony.

7. This cause should be reversed and rendered because the answer of the Jury to Issue Number 11, that appellee had incurred necessary and reasonable medical expense in the past to the amount of $3,900 is contrary to the undisputed evidence in this case in that $3,540 of such amount was furnished by the Veterans' Administration, for which appellee did not become liable and which he did not pay.

A statement is necessary.

Testimony was tendered to the effect that the electric lines of appellant involved in this accident crossed a county road in an easterly and westerly direction; that the lines branched off of the Navarro-Cheneyboro distribution line and went in an easterly direction to a house located in the field, which house was being serviced by appellant; that the lower wire was a neutral or ground wire and carried no electrical energy, while the upper wire was an energized wire and carried 7200 volts of electricity; that the neutral wire has a ground at each transformer and on most of the poles, the ground wire running up the pole and tying into the neutral wire which, in turn, connects it with the ground; that there is also a ground wire connected at the substation to rods driven in the ground; that the height of the lower or neutral line was a little over 19 feet above the surface of the roadway, and that the height of the upper or energized line was approximately 23 feet above ground. Appellant's witness, Carroll Fletcher, said that the top line measured 23 feet and the bottom line measured 19 feet and 8 inches above the surface of the roadway. It appears to be without dispute that appellant had no knowledge or notice that appellee or those by whom he was employed was going to move a house under appellant's electric wires at this place, and there is no evidence in this record that appellant knew or had reason to know that the conditions as they normally existed were to be changed or had been changed; that the electric circuit consisted of two wires, one above the other, separated a distance of about 40 inches; that the upper conductor served the function of sending electricity to the consumer, and that the lower conductor returned it back to the substation; that both wires are and were necessary in the transmission of electricity, and that both wires are considered dangerous, and that each wire was treated as a dangerous wire, and that there was some slack in each wire; that the lower wire measured about 18 feet 8 inches above the surface of the roadway, and the upper wire about 22 feet 8 inches above the surface of the roadway; that this road was a rural road in an agricultural and oil field area over which trucks, machinery, etc., requiring high clearances; that plaintiff was employed by a house mover and at this particular time was riding on the house being moved, and that when it reached the low hanging wires the house lacked only a foot or foot and a half of clearing the lower wire; that the operator of the truck pulling the house brought his truck to a stop and thereupon Bobby Jacobs made some observation as to whether the wire was insulated; that he was wearing rubber cleated shoes, and that he put on some rubber gloves; that he got down as far from the conductor as he could, and while using a wooden board attempted to lift the wire over the gable of the house, and in so doing he received the electrical shock and deep penetrating burns to his head, neck and body and was hospitalized for nearly a year and maimed for life. Bobby testified substantially to the effect that he was 26 years old and married, and has two children; that he graduated at public schools, and that in the

fall of 1951 and in the spring of 1952 he attended Navarro Junior College, and that he was specializing in physical education; that he desired to perfect himself in sports, and in the playing of base ball; that he was a pitcher and that he was right handed; that in the spring of 1952 he took a job to await the action of the draft board, and that he was inducted into the army in March 1952, and served in the army until March 1955; that after his tour of duty in the army he intended to finish his college education, but was forced to go to work in order to take care of his family; that he did go back to school in the fall of 1955, and that up until the time he had his accident he was working at odd jobs besides going to school; that at the time they were engaged in moving the house G. H. Sutherlin, Sr., and G. H. Sutherlin, Jr., and A. L. Armstrong were also present and helping with the moving of the house; that he got on top of the house pursuant to instructions given to him by Sutherlin, Sr.; that he was on the roof for the purpose of watching the wires, and in case the wires didn't clear to move them over; that no one was on the roof with him; that he had worked on the roof the day before; that he was dressed in a pair of khakis, and had on a pair of rubber cleated shoes and cap of some type. Bobby testified that the two wires were swinging at an angle across the road; that these wires were tied to the top of the pole, and that they were apart approximately 3 feet; that when the truck stopped they were approximately two or three feet from the wires; that the top wire cleared the roof; that when he looked at the wires he said:

"A. Well, I noticed that they were insulated, but I still went down and called for a pair of gloves, at this time.

"Q. Now what kind of gloves did you get? A. They were rubber-type gloves; gloves coated with rubber.

"Q. And then what did you do? A. Well, we had a board laying on the back of this truck that was put up there to push these wires over the top of the house, and I crawled over this front gable, down low, and went back and got this board to push this wire over the gable; * * *" that he was using both hands with the board; that his left hand was on the bottom of the board, and his right hand was approximately 18 inches above it on the board.

"Q. Now what did you do next, Bobby? A. I don't remember doing anything else.

"Q. What is the last thing you remember doing? A. The last thing I remember doing was getting crouched down as low as I could with this board to move the line.

"Q. Were you as far away from those wires as you could possibly get? A. Yes, sir.

"Q. And you don't remember anything after that? A. No, sir.

"Q. Do you recall whether or not you lifted the wire? A. No, sir, I don't.

"Q. What is the next thing you remember? A. Approximately three days later in the hospital, sir."

Witnesses for the power company drew a distinction between the lines in its distribution system and the lines in its power system by calling those which transmit electricity to the customers "distribution lines," and those which transmit electricity from town to town "transmission lines;" that usually lines employed to serve customers are either 120 or 240 volt lines; that these particular lines in question were 7200 or 12,500 volts and transmitted power from the town of Navarro to Cheneyboro to Angus to Purdon. Mr. Ferguson, District Manager of the Light Company with 25 years experience, testified to the effect that this lower wire carries the electric current back to the power house or sub-station; that it is considered a dangerous wire and is

so treated by the electrical industry, and that the reason they insulate these wires is because they are dangerous, and to afford a measure of protection, and if they are not insulated, they are dangerous. Mr. Burford, Electrical Engineer for the light company, testified to the effect that the lower wire can become dangerous under a variety of circumstances, and it is so treated by people who are experienced in handling wires; that the power company regards it as a dangerous line and it would be hazardous to cut it in two and grab both ends because it would put you in the path of the electrical circuit; that people with the power company handle it like any other transmission line of high voltage; that some of the conditions that render it harmful is that of arcking, which varies greatly depending upon atmospheric conditions and other factors, such as induction and conduction, and lack of proper insulation. The Superintendent, Mr. Fletcher, of the Power Company, testified to the effect that they teach their employees that the ground wire is dangerous, because electricity can build up in it under certain conditions. The witness, Robuck, of the power company, stated that ground wires can become defective, and that if certain things happen to the lower wire it can hurt you; that under certain conditions it could acquire a potential or a voltage.

■ The evidence is undisputed that the plaintiff was severely injured; that he suffered much pain, and that he has sustained the loss of his right arm, but owing to the fact that the amount of the award is not assailed as being excessive, we need not comment further on the extent of appellee's injuries. Before discussing appellant's points, we think it is pertinent here for us to say that as a reviewing Court, it is our duty to consider the evidence and the inferences properly to be drawn therefrom in the light most favorable to the party obtaining the verdict, and it is our duty in considering controverted issues of fact to accept as true that testimony which tends

to support the verdict. 3–B Tex.Jr. pp. 370 and 372. Moreover:

"Where the facts are controverted, or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the Court. An issue of fact is raised 'if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.'" Citing cases. See Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511, 514, points 8 and 9, writ ref. Moreover, "'It was the jury's province to weigh all of the evidence, to decide what credence should be given to the whole or to any part of the testimony of each witness. "The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable."'" See Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, at page 199, point 6.

■ No rule is better settled than the one to the effect that if there is evidence of probative value to sustain the findings of the jury, the appellate court is bound by such findings. See Lynch v. McLendon, Tex.Civ.App., 283 S.W.2d 88, point 3 (N.W. H.), and cases there collated. See also statement of the rule by our Supreme Court In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660.

Appellant discusses his Points One and Two together, they are substantially:

1. The Court erred in submitting Issue Number 4, and entering judgment based on the jury's answers thereto because there was no findings by the jury that the

maintenance of the lower line at a height of less than 22 feet was negligence, and the uncontroverted evidence showed that such line was maintained at a height in excess of that required by statute.

2. The Court erred in not granting its Motions for Instructed Verdict, and for Judgment Non Obstante Veredicto, and in entering judgment for appellee, because the undisputed evidence shows that appellant's distribution lines at the time and place were above the height required by law, and appellant had no notice or knowledge of any change of conditions at said location creating a dangerous situation.

As we understand appellant's Points One and Two—this cause should be reversed and remanded or reversed and rendered because: (1) Its top wire was more than 22 feet above the ground and, therefore, it does not come under the condemnation of Article 1436 nor Article 1436a, Vernon's Rev.Civ.St.; (2) It is appellant's contention that the lower wire, although it is under 22 feet, does not come within the prohibition of the statute, because it was grounded, and was not, under the terms of the statute, a transmission line; And (3) That there was no finding by the jury that the maintenance of the lower line at a height of less than 22 feet was negligence, and that the uncontroverted evidence shows that such line was maintained at a height in excess of that required by the statute. We do not believe that these views of appellant are applicable and controlling to the factual situation, and the verdict of the jury in his cause. It is without dispute that the lower line was under the 22 feet. Much testimony was tendered to the effect that this lower line completed the circuit and did carry electric current, and that it was a dangerous wire, and that is the reason it was insulated, and under the evidence tendered the jury would have the right to infer that when the appellee raised the board to lift the wire he came in contact with the lower wire because that was the one preventing them from moving the house far-

ther on the road. Moreover, if the lower wire carried electrical current, it was dangerous, and the jury had a right to believe and so found under the testimony; that under these circumstances, this Court is of the view that such lower line was for all practical purposes a line for the transmission of electrical current, regardless of any technical view or theory, and that by reason thereof the maintenance of such line at a lower level than 22 feet as provided in Articles 1436 and 1436a aforesaid, made such maintenance a violation of the statute, and that the light company was guilty of negligence in so doing as a matter of law. See statement of Rule in Burton v. Billingsly, Tex.Civ.App., 129 S.W.2d 439 (W.Ref.) Pt. 7, at page 442. Moreover, the jury found that the maintenance of the lower electric line at the time and place in question was closer to the surface of the roadway than an ordinary prudent person would have maintained it under the same or similar circumstances, and that such conduct in so doing was the proximate cause of the accident. But, in appellant's brief we find substantially this argument: The Trial Court's position in this case is that Article 1436 and Article 1436a, R.C.S., of Texas required appellant's lines to have a clearance of 22 feet above the surface of the traffic lane, and inasmuch as the lower or neutral line was not 22 feet above such traffic lane, that appellant was negligent in so maintaining said line as a matter of law. Article 1436 aforesaid gives the public utilities the right to erect its lines across public roads, etc., and specifically provides: "Such lines shall be constructed upon suitable poles in the most approved manner and maintained at a height above the ground of at least twenty-two feet." Article 1436a gives the public utilities the right to maintain and operate its lines over and across highways and specifically provides: "Except as modified or changed by ordinance or regulation in incorporated cities and towns, all lines for the transmission and distribution of electric energy, whether along highways or elsewhere, shall be constructed, operated and maintained, as to clearances, in accordance

with the National Electrical Safety Code, as published in March, 1948, by the National Bureau of Standards, Handbook 30, provided that lines along highways and county roads shall be single pole construction, and provided that at any place where a transmission line crosses a highway or road it shall be at least twenty-two (22) feet above the surface of the traffic lane." This Court is of the view that Article 1436a aforesaid does not specifically repeal Article 1436 aforesaid. We think the effect of that statute is to make it a little more specific in that it does provide that at any place where a transmission line crosses a highway or road it shall be at least 22 feet above the surface of the traffic lane. Our view is that the mere designation of the electric line carrying the current from the source to the customer, a transmission line, and the designation of the line returning the current from the customer to the source as a distribution line does not prevent the line carrying the return current from being a transmission line for all practical purposes. We think the evidence tendered in this cause shows that the line returning the current was dangerous, and it was insulated. We think it is obvious that if the lower line was dangerous in that it carried electricity or the returning current completing the circuit, it would certainly be subject to the terms of the statute and should have been raised a distance of not less than 22 feet over the roadway, and that such failure was negligence as a matter of law. If the Court is right in this view it was not error to submit Issue Number 4, nor was it error to refuse Appellant's Motion for Instructed Verdict, nor was it error to refuse Appellant's Motion for Judgment Non Obstante Veredicto under the authorities heretofore cited. We think the evidence is ample to sustain the jury's view that the lower wire carried electricity or transmitted it, and that by reason thereof it was dangerous, and we think comes within the provisions of Articles 1436 and 1436a aforesaid. Since Articles 1436 and 1436a aforesaid have been fully discussed by our Supreme Court in City of Mason v. West Texas Utilities Company,

150 Tex. 18, 237 S.W.2d 273, Points 13 and 14, we feel that further comment thereon would be to no avail, and that appellant's position and contentions with reference thereto are without merit. That leads us to say that the words "the transmission lines" as used in the statutes mean any lines used to transmit electricity and not just those which are a part of the power or transmission system. We think this view is sustained by the rule, that the policy of the Courts is to avoid giving statutory words a technical meaning, and in 50 Am.Jur. p. 228, we find this statement of the rule: "It is a general rule of statutory construction that words of a statute will be interpreted in their ordinary acceptation and significance and the meaning commonly attributed to them." See also Houston Lighting & Power Company v. Fleming, Tex.Civ.App., 128 S.W.2d 487, reversed on other grounds, 135 Tex. 463, 138 S.W.2d 520, 43 Am.Jur., Sec. 17, p. 582, and 19 J.J. Sec. 6,880. Finally, we think the statute itself indicates that the distinction urged by the appellant here is and was not intended. First of all, the caption of the act reads: "An Act to facilitate and encourage the distribution of electric energy to the inhabitants of small towns * * * by providing that lines for the transmission * * of electric energy may be constructed, erected and maintained on the right-of-way of roads and highways, * * *". Acts 1949, c. 228. Our view of the statute is that the entire act refers to lines used in the distribution of electricity as transmission lines. We think our views here stated are in accord with the views of this Court in Jezek v. Texas Power & Light Company, 282 S.W.2d 112, 117 (N.R.E.), and with Texas Power & Light Company v. Peterson, Tex.Civ.App., 288 S.W.2d 247. We are also of the view that our Texas Courts generally have applied the customary and usual meaning to the expression "transmission lines" as used in the statute rather than the technical definition used by appellant. See West Texas Utilities Co. v. Harris, Tex.Civ.App., 231 S.W.2d 558; West Texas Utilities Co. v. City of Baird, Tex.Civ.App., 286 S.W.2d 185; Mayes v. West Texas Utilities Co., Tex.Civ.

App., 148 S.W.2d 950; Havens v. Dallas Power & Light Company, Tex.Civ.App., 256 S.W.2d 689; Cloud v. Houston Lighting & Power Company, Tex.Civ.App., 199 S.W.2d 260; West Texas Utilities Co. v. Renner, Tex.Com.App., 53 S.W.2d 451. Moreover, we think the Texas view is sustained in other jurisdictions. See 84 A.L.R. 692; See also the Article on Electricity, 15–B, T.J. Sec. 25. Going back to the testimony tendered, which we have to some extent detailed, the jury found in response to Issue Number 9, that the lower electric wire of the defendant, Power Company, at the time and place in question, was used in the transmission of electricity.

So, it follows that we are of the view that the Trial Court did not err in holding that the lines in question are transmission lines within the meaning of the statute. We think it follows from what we have said that the Court did not err in overruling Appellant's Motion for Judgment Non Obstante Veredicto, and that Points 1 and 2 are each overruled.

 Going back to the evidence immediately before and at the time of the accident, as we understand the record, we think that most of the pertinent part is undisputed. The evidence shows that the driver of the truck pulling the house came to a complete stop when he saw that the lower wire did not clear the house. The plaintiff immediately got some rubber gloves and the board—

"Q. What is the last thing you remember doing? A. The last thing I remember doing was getting crouched down as low as I could with this board to move the line."

When he did so he received a shock and had no other memory as to what happened. There is also evidence to the effect that the poles to which both wires were attached were leaning and that this leaning caused some slack in both wires, but the important thing to bear in mind is that the lower wire did not clear the house top and the question

is: Was the appellee guilty of contributory negligence as a matter of law in attempting to raise this wire so that it would clear the house? We are of the view that the conduct of appellee in this case, above recited, is quite different to the conduct of the appellee in Texas Power & Light Company v. Peterson, Tex.Civ.App., 288 S.W.2d 247 (N.W.H.). It was the province of the jury to determine whether or not appellee was guilty of negligence in this attempt to raise the lower wire so that the house would clear. In Texas, contributory negligence and proximate cause are questions of fact to be decided by the jury, except in the following respects: (a) when they consist of violation of the law; (b) or the circumstances are such that in the opinion of the court reasonable minds could not arrive at different conclusions. See Burton v. Billingsly, Tex.Civ.App., 129 S.W.2d 439 (W. R.) pt. 7, page 442, Opinion dated May, 1939; Biggers v. Continental Bus System, Tex., 303 S.W.2d 359, pt. 1. See also Cross v. Wichita Falls & S. R. Co., Tex. Civ.App., 140 S.W.2d 567; Wichita Valley R. Co. v. Fite, Tex.Civ.App., 78 S.W.2d 714; Texas-Mexican R. Co. v. Hoy, Tex. Com.App., 24 S.W.2d 18; Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R. 2d 853.

Are the circumstances in this cause such that in the opinion of the Court reasonable minds could arrive at different conclusions? We think they are. In Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696, 697, our Supreme Court made this statement of the Rule: "When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." In Lang v. Henderson, 147 Tex. 353, 215 S.W.2d 585, point at page 587, our Supreme Court made this statement of the rule: "It is elementary that the question of contributory

negligence is generally, by reason of the very nature of the defense, one of fact for the jury to decide. Gulf, Colorado & S. F. Ry. Co. v. Gasscamp, 69 Tex. 545, 7 S.W. 227; Temple Electric Light Co. v. Halliburton, 104 Tex. 493, 140 S.W. 426, Id., Tex. Civ.App. 136 S.W. 584; McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442. According to the authorities above cited and many others, (69 Tex. 545, 7 S.W. 228). 'In order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it.' " Our Supreme Court in Texas & N. O. R. Co. v. Day, Tex., 316 S.W.2d 402, re-affirmed the above doctrine. As we understand appellant's brief and its position in oral argument, it is to the effect that since the lower wire was not energized that appellee could not have received his shock by attempting to move it unless he raised it to such height that it came in contact with the upper wire carrying the 7200 volts. That is to say, that since the appellee does not know what happened after he took the board and started to lift the wire and does not say specifically that he attempted to lift the lower wire, that the proof wholly fails to show exactly how he received his shock and injuries, and that by reason thereof his proof of negligence and proximate cause fails. We cannot agree with appellant's theory in this behalf, and we think that it invades the province of the jury. Under the testimony here tendered and the rule of law in Texas controlling, we think the jury would have the right to infer that appellee attempted to move the lower wire, and in so doing received his shock and resulting injuries. See Burt v. Lochausen, supra.

■■■■ Appellant's Fourth Point is to the effect that the Court erred in submitting Issues Numbers Five and Six, and entering judgment based on the jury's answer thereto, because the undisputed evidence shows that appellant maintained his lower line in excess of 18 feet as required by the statute, and by reason thereof that common-law negligence should not have been submitted. We are not in accord with this view. First of all, under our system of pleading and practice the plaintiff can allege as many grounds of negligence as he thinks he may be able to tender proof thereon, and the fact that he pleads grounds of statutory negligence does not preclude him from pleading common-law negligence. We think this proposition is so well settled that it needs no citations thereon. Evidence was tendered in this case as to the lack of proper insulation of the lower wire, and we think that the evidence was sufficient to tender the issue, and that the evidence is ample to support the jury's answer to such issue. See Jezek v. Texas Power & Light Company, Tex.Civ.App., 282 S.W.2d 112 and 117 (N.R.E.), and authorities there cited. See also Texas Power & Light Company v. Culwell, Tex.Civ.App., 19 S.W.2d 816 and 820, Tex.Com.App., 34 S.W.2d 820. Perhaps we should say one of the appellant's witnesses testified as follows:

"Q. All right. Now, Mr. Wallace, the break you saw in that upper line was greater than a pin-point break, wasn't it? A. Oh Yes, it's greater than a pin-point break.

"Q. The defects you noted in the lower line were greater than pin-point breaks, weren't they? A. Why sure."

One of appellant's linemen testified in part:

"A. I'll answer it this way: That's the only break in the top wire.

"Q. All right. A. In the insulation.

"Q. Then so far as you know that's the only place where electricity could escape, that correct? So far as you know? A. So far as I know, yes, sir."

If the foregoing witnesses were correct in their statements the jury would have a

right to believe if there had been no defects in the insulation the electricity could not have escaped from the line and Bobby would not have been injured. Needless to say the evidence showed that Bobby was injured and that his injuries were due to the fact that he received an electric shock and burns in his attempt to raise one of the wires so that it would clear the house. It follows that we are of the view that Points Four and Five do not present error, and each is overruled.

■ Appellant's Seventh Point is to the effect that the cause should be reversed because the jury's answer to Issue No. Eleven, to the effect that appellee had incurred necessary and reasonable medical expenses in the amount of $3,900, because of the fact that $3,540 of this amount was furnished to appellee by the Veterans' Administration, and that appellee did not become liable for the same, and which sum he had not paid. Appellant in his argument says that it is without dispute that $3,540 of the foregoing amount was paid by the Veterans' Administration, and because appellee had not paid or promised to pay such cost, and in view of the fact that the service was furnished to appellee by the Veterans' Hospital appellant is not liable for the medical fees to the extent of $3,540. Appellant grounds his view on the rule announced on decision of this Court in City of Waco v. Diamond, Tex.Civ.App., 46 S.W.2d 1049; same case, Supreme Court, Tex.Com.App., 65 S.W.2d 272, and Tarrant County Traction Co. v. Bradshaw, Tex.Civ.App., 185 S.W. 951, by Fort Worth Court.

We are not in accord with appellant's views. In 13 Tex.Jr.P. page 248, Sec. 133, we find this statement of the rule:

"An exemption from liability for the expenses of medical treatment cannot be successfully claimed by the defendant on the ground that the services were voluntarily and gratuitously rendered, the reason being that the gratuity is for the benefit of the injured person and may not be claimed by the one who caused the injury."

Substantially the same doctrine was announced by the Texarkana Court in Fort Worth & Denver Ry. Co. v. Walker, 48 Tex. Civ.App. 86, 106 S.W. 400, pt. at page 403, and cases there cited. This opinion was rendered in 1907 and Writ of Error was refused by our Supreme Court which, at that time, was composed of the distinguished Jurists Gaines, Brown and Williams. The same rule was applied by the Third Court in Houston & T. C. R. Co. v. Gerald, 60 Tex.Civ.App. 151, 128 S.W. 166, opinion by Justice Jenkins. This Court being composed at that time of Justices Key, Rice and Jenkins, and Application for Writ of Error was refused by our Supreme Court. It is true that the rule relating to Writs of Error that has been in force since June 1927 did not apply at that time, but we think we may assume that our Supreme Court would not have given approval to such an important question if it had not been in accord with the views expressed by these distinguished. Courts of Civil Appeal. For history on notations on Applications for Writs of Error, see Texas Bar Journal, Vol. 12, No. 11, Dec. 1949, page 547. See also Texas Rules Civ.Proc. 483, Justice Jenkins, in the Gerald case, relied upon the Walker case aforesaid, and in addition thereto cited Pennsylvania Company v. Marion, 104 Ind. 239, 244, 3 N.E. 874; Brosnan v. Sweetser, 127 Ind. 1, 7, 26 N.E. 555; City of Indianapolis v. Gaston, 58 Ind. 224, 227; Klein v. Thompson, 19 Ohio St. 569; Ohio & M. Railway Co. v. Dickerson, 59 Ind. 317. Although the opinions in the foregoing cases have been cited many times, we have found no decision by our Supreme Court which passes upon the exact question except such approval as the Supreme Court gave to these two cases by refusing outright the Application for Writs of Error. However, the same doctrine was applied by the Ft. Worth Court of Civil Appeals in Tri-County Electric Cooperative, Inc. v. Clair, Tex. Civ.App., 217 S.W.2d 681 (N.R.E.), and City of Fort Worth v. Barlow, Tex.Civ.

App., 313 S.W.2d 906 (N.R.E.). See also statement of the rule in 128 A.L.R. 687; 15 Am.Jur. p. 615, and Houston & T. C. R. Co. v. Gray, Tex.Civ.App., 137 S.W. 729 (Opinion by Judge Jenkins of the Austin Court, W. ref.). See also 14 Tex.Dig. Damages, ☜46. Also Standard Oil Co. of California v. United States, 9 Cir., 153 F. 2d 958, pt. 8, at page 963, and cases there cited.

Returning to the Barlow case, we find that the injured plaintiff in that case was a veteran and that he was qualified for medical services in a government hospital without charge, and he assigned his claim for medical services at the time of trial to the Veterans' Administration, and that the Veterans' Administration intervened in the suit. There is no assignment of appellee's medical services in this cause, nor is there an intervention by the Veterans' Administration; nevertheless, we are of the view that the appellee here under the cases cited is entitled to recover for the medical services and hospitalization rendered to him by the Veterans' Hospital. In Plank v. Summers, 203 Md. 552, 102 A.2d 262, 266, we find this statement of the rule:

"It therefore appears that the majority of the cases hold that where hospital and medical services are furnished gratuitously to the injured party, he can recover the value of those services from the tort feasor. This seems to be the modern rule. Here also it might well be considered that medical and hospital services supplied by Government to these members of the United States Navy were part of the compensation to them for services rendered, and therefore that by their service in the Navy they had paid for these. If, by their services, the appellants paid for the medical and hospital expenses, certainly the value of these are proper items for the jury to consider in arriving at the amount of damages * *."

Perhaps we should say that the foregoing quotation from the Maryland Court is by its Court of Appeals, which is its highest Court. (See this case for a comprehensive discussion of the rule and for the cases there cited.) Perhaps we should say that the rule in Texas, as well as in the other states, which is shown in the cases here cited, is grounded on the theory that the wrongdoer should not be permitted to profit by any gratuity extended to his victim, and that consequently the reasonable value of such services may be recovered.

Finally, we are of the view that the evidence is ample to sustain the medical and hospital bills rendered to appellee by the Veterans' Hospital.

We have considered each of the other Assignments of Error and we are of the view that none present reversible error. Accordingly, the judgment of the Trial Court is affirmed.