GAINES H. JOHNSON, Plaintiff and Plaintiff in Error,
v. JOHNSON CITY, Defendant and Defendant in Error.
—292 S. W. (2d) 794.

Eastern Section.    January 11, 1956.

Petition for Certiorari denied by Supreme Court April 6, 1956.

Thomas E. Mitchell, Johnson City, and H. Dennis Erwin, Erwin, for Johnson.

Simmonds, Bowman & Herndon, Johnson City, for Johnson City.

HALE, J. We speak of the parties as they appeared in the trial court.

Plaintiff sued the defendant, the owner of an electrical distribution system, for personal injuries he sustained when a television test antenna he was raising came in contact with an uninsulated 7,200 volt "high" line of defendant. At the close of all the proof, the trial judge sustained defendant's motion for peremptory instructions, holding the defendant was not guilty of any negligence and that plaintiff's injuries were the result of his own negligence. Plaintiff perfected this appeal, insisting the evidence was sufficient to take the case to the jury on both questions.

The declaration charged that on August 22, 1953, the plaintiff sustained serious and permanent injuries as a result of electrical shock by reason of this test antenna coming in contact with such line; that the defendant was negligent in (a) transmitting this current over a line which was too close to the ground for safety, (b) in not insulating such line, (c) in permitting the covering of such line to become frayed and hang down for some inches under the wire, and (d) in failing to post warnings of the presence of this high voltage line.

Being required to do so, the defendant filed special pleas, the gist of which was that it was not guilty of any negligence in the way and manner the line in question was erected and maintained; that this line was 27 feet above the ground, which was more than the minimum required; that neither law nor custom required it to erect warnings; that defendant was guilty of proximate contributory negligence in that he deliberately raised this antenna so that the same came directly in contact with the power line, which he knew or should have known carried high voltage electricity; that this act was in violation of the common law as well as the 1951 Electrical Code and National Safety Code, and Regulation 15 promulgated by the Division of Fire Prevention of the Department of Insurance and Banking of the State of Tennessee; and that he was guilty of negligence per se in erecting the antenna without effectively grounding it as required by the aforesaid regulation.

If there is a dispute as to any material fact, or if the minds of reasonable men might differ as to the conclusion to be drawn from the given facts, then there is presented a jury question. Schindler v. Southern Coach Lines, 188 Tenn. 169-173, 217 S. W. (2d) 775.

Bearing that principle in mind, we look at the evidence.

Plaintiff was thirty-five years of age, and had been employed in the retail hardware and appliance business for several years, in the course of which he, for five months preceding the accident, had been selling and erecting television sets in Johnson City. He knew nothing about electricity other than "it will kill you". On the day of the accident, August 22, 1953, he was preparing to install a television at the residence of Mrs. Paul Barnett, 200 East Walnut Street, which runs in an east-west course. On the south side are small residences on 50 foot lots, including that of Mrs. Barnett, and on the north side is a lumber yard of the Harris Manufacturing Company.

From the front of this residence to the sidewalk is a yard 10.3 feet in depth. The sidewalk is 4.5 feet in width, and there is a little grass plot about 2 feet in width, and in which was constructed the defendant's power line which served the residences and lumber yard. As noted, it carried 7,200 volts grounded, and is called a "primary" line. The residences are served by secondary lines of lower voltage. The primary line is supported by plain wooden poles, and has no insulation but is "weatherproofed".

On the day in question the plaintiff, accompanied by the seventeen year old son of his employer, had taken to the Barnett residence a trailer cart used to conduct tests for proper height of the antenna. On this cart is a hollow telescopic rod or boom pole 22 feet in length, but which by means of the telescopic arrangement can be extended 55 feet in the air. The method of operation is to attach the antenna to the front of this rod and then by means of mechanical pressure from a crank raise the antenna

and fix the proper height for the best reception. The crank is on the lower left side. It was being operated by the lad in question by pulling on the end. The antenna had been raised within two feet of the line when last noticed by the plaintiff. He then walked around to the front to set the antenna in the direction he wanted it to go, i. e. "toward the Harris Manufacturing Co., right across the street", then returned to the rear and took hold of this boom. Either the antenna was raised against or swayed and came into contact with this primary wire. The unfortunate boy holding the crank was instantly killed. Plaintiff was severely burned. He said the antenna was not being moved at the time he received the shock and as far as he knew had not been moved when he last observed it two feet from the wire. We might add that when this cart and boom was put in action it had not been grounded, which of course is desirable and necessary as a safety precaution when working in close proximity to electric wires. Had this simple precaution been taken, a death and much suffering would have been avoided.

Was the defendant guilty of negligence? What we consider to be the uncontradicted proof is that the wires were 27 feet over the ground, or 7 feet above the minimum prescribed by the National Safety Code for similar areas. Plaintiff estimated the height of the wire to be 24 feet. He says he measured it for 25½ feet, but is vague as to when or where or how he measured it. But be it 24, 25½, or 27 feet clearance, it was well above the 20 feet minimum recognized by the aforesaid code. It was not obscured by trees but was plainly visible and plaintiff knew it was there. It was not located in close proximity to where men would be supposed to work. To

be sure, the defendant was charged with using the highest degree of care in handling this most useful and dangerous agency. See Rogers v. City of Chattanooga, Tenn. App., 281 S. W. (2d) 504, which discusses all of the Tennessee cases bearing on this question.

■ As we see it, the question of liability of the defendant turns on this: should it have anticipated that by reason of the growth in the installation of television sets, it was probable that some one would be injured by an uninsulated wire? If so, it would be forced to re-build all of its urban and rural systems so as to raise the lines beyond the possibility of contact, or bury them under ground, or to insulate them. Of course there are many places where it is necessary to insulate wires of this voltage, but the site of this accident was not one of such places.

In 18 Am. Jur. "Electricity", Sec. 53, pp. 448-449, it is said:

"The negligence of an electric company cannot, according to the generally accepted test, be said to be the proximate cause of an injury within the law of negligence unless, under all the circumstances, the injury might have been reasonably foreseen by a person of ordinary intelligence and prudence; it is not enough to prove that the injury is a natural consequence of its negligence. It must also have been the probable consequence. This rule is applicable where the act consists of a violation of a statute unless such violation is wanton or the statute is one designed to protect some special class, as infants of tender years. The law does not require impossibilities of such companies in avoiding accidents and resulting injuries.

In the erection and maintenance of their poles, wires, and other appliances, they are bound to anticipate only such combinations of circumstances and accidents and injuries therefrom as they may reasonably forecast as likely to happen, taking into account their own past experience and the experience and practice of others in similar situations, together with what is inherently probable from the condition of their appliances as they relate to the conduct of their business. For example, if a storm that could not be anticipated or reasonably foreseen is the cause of a wire falling and the company is not negligent in allowing it to remain there for an unreasonable time, the company will not be liable for injuries resulting. Also, where the injury occurs in a place to which persons are not in the habit of resorting, either for pleasure or business, the electric company will not be liable, for in such a case the injury could not reasonably be anticipated. If, however, the injury follows as a direct consequence of a negligent act or omission, it cannot be said that the company is not responsible therefor because the particular injury could not have been anticipated. Thus, if a live wire falls upon a sidewalk, the electric company should reasonably anticipate that some one may attempt to remove it to prevent injury; and if in so doing some other person is injured, the electric company will be liable.''

This text is supported by many cases from various jurisdiction.

We do not think there was evidence of negligence on the part of the defendant.

■ But if there was, then the accident in question was due solely to the negligence of the plaintiff. He was in charge of this operation. He knew the front yard was narrow, thus creating a hazard in raising the antenna in close proximity to the wire in question. He knew the antenna (which from the photographs filed in evidence seems to have been very large) was getting within two feet of these wires, and then he walked to the front and moved the antenna to point it "right across the street", and then without further notice returned to his place at the rear, took hold of the boom to raise it further. When he was at the front and changed the direction nothing occurred, so it must have been something that thereafter occurred which caused the antenna to come into contact with this wire, which of course was due to the pressure then being exerted or by the antenna swaying against the wire. No doubt but that he thought he had sufficient clearance, but this error in judgment was *his* error and nearly cost him his life. As before noted, he had not taken the precaution of grounding this antenna cart. It is difficult to understand how any adult person would be so careless and indifferent to possible consequences. In working this record there occurred to the writer the language used by the late lamented Chief Justice Green in Southern Ry. Co. v. Simpson, 149 Tenn. 458, 261 S. W. 677, 678, when he spoke of "murderous contempt for all regulations ordained to control their movements" on the part of persons operating motor vehicles.

The shallowness of the yard, the proximity of the wires, and the size of the antenna all made it incumbent upon the plaintiff to exercise a degree of care commensurate with the peril involved. Defendant did not know of the proposed test being undertaken, consequently had no op-

portunity to de-energize its line. The only conclusion to be drawn from the evidence is that the plaintiff was guilty of negligence in the way and manner he directed and handled this operation.

In the case of Grigsby & Co. v. Bratton, 128 Tenn. 597, 163 S. W. 804, 806, the question of contributory negligence is discussed, and the court, speaking through Mr. Justice Sam C. Williams, said:

"If, notwithstanding defendant's fault, plaintiff's negligence so continued and contributed to the accident, then either the negligence of the parties was concurrent, or else the plaintiff himself is to be held as having had the opportunity of avoiding the injury, and his contribution is, in either event, not remote in the chain of causation. Barr v. Southern R. Co., 105 Tenn. 545, 58 S. W. 849; Seith v. Commonwealth Electric Co., 241 Ill. 252, 259, 89 N. E. 425, 24 L. R. A., N. S., 978, 132 Am. St. Rep. 204, 208; Memphis St. Railroad v. Roe, 118 Tenn. 601, 609, 102 S. W. 343.

"What is meant by 'proximate cause' is not necessarily that which is next or last in time or place, but that which is a procuring, efficient, and predominant cause. Closeness in casual relation, rather, is the meaning. Notes to Gilson v. Delaware, etc. Canal Co., 36 Am. St. Rep. 811; Barr v. Railroad, supra; Rosenbaum v. Shoffner, 98 Tenn. [624] 630, 40 S. W. 1086, and cases cited; 13 Am. & Eng. L. (2d Ed.) 490; 7 Am. & Eng L. (2d Ed.) 376; 29 Cyc. 491-499.

"Assuming that defendant was negligent, we are of opinion that plaintiff's negligence continued to operate concurrently at the moment of the accident in

producing it; that there was no independent, self-supporting act of defendant that solely caused the injury, or so came into operation as to make plaintiff's negligence remote.''

In Stafford v. Consolidated Bus Lines, 179 Tenn. 185, 164 S. W. (2d) 15, it was held that where a ten year old child was struck by an automobile when she ran from behind a bus illegally stopped on a highway, her injuries were proximately caused by her negligent act independent of any negligence imputed to the bus company, which could not reasonably have foreseen or anticipated such act, thus relieving the bus company of liability.

In Gray v. Brown, 188 Tenn. 152, 217 S. W. (2d) 769, 772, it was held that the act of the plaintiff, Mrs. Brown, in attempting to close the door of a fast moving cab was negligent, and that ''her negligence was not contributory but was the sole, proximate and efficient cause of her injuries''.

Other cases illustrating these principles of law might be cited, but we think the foregoing are sufficient.

It results that the judgment below must be affirmed at the cost of plaintiff in error and sureties on his appeal bond.

Affirmed.

McAmis, P. J. and Howard, J., concur.