Pauline BURK, Respondent,

v.

**MISSOURI POWER & LIGHT COMPANY, a Missouri Corporation, Appellant.**

No. 52478.

Supreme Court of Missouri, Division No. 2.

Nov. 13, 1967.

E. J. Murphy, Butler, Max Von Erd-
mannsdorff, Liberty, for respondent.

Alan F. Wherritt, William J. Turpin,
Wherritt & Turpin, Liberty, David Harri-
son, Jefferson City, for appellant.

BARRETT, Commissioner.

The plaintiff, Pauline Burk, has
been awarded $25,000.00 damages for the

death of her husband by electrocution on May 3, 1965. The appellant, Missouri Power & Light Company, makes four points but they are all related to or connected with its principal contention that its motions for judgment should have been sustained for two reasons (1) that "the evidence failed to establish the fact that Harold Burk, the deceased, was in the exercise of due care and caution for his own safety and that the defendant's negligence, if any, was the proximate cause of decedent's death" and (2) that plaintiff's husband was guilty of contributory negligence as a matter of law "(f) or failing to look where a duty to look existed and to see what was plainly visible if he looked." In connection with these assignments it is said that Instruction 2, the principal instruction, was erroneous because (1) paragraph 3 "requires the defendant to foresee someone being injured by electrical energy from its power lines while erecting a TV antenna" and (2) that paragraph 4 submitting failure to warn was erroneous "because of the presumption in Missouri that persons of ordinary intelligence are presumed to know the danger from electrical energy and this presumption was not rebutted by any of plaintiff's evidence." The appellant's specifications have been thus quoted to the end that there may be no question as to the specific issues precisely presented. There is no claim that Instruction 2 is erroneous in form, the objections are directed to the two substantive claims and their mere recitation delimits the issues as to a submissible case to the sole claims of foreseeability and proximate cause while the claim of contributory negligence relates only to the duty of the decedent in the circumstances to look and finally to know of the danger from what it calls "electrical energy." In the argument pages of its brief the appellant says that the court erred in admitting certain evidence as to the lack of warning signs but aside from its intimate relationship and connection with the principal issues these statements have not been presented in the brief as formal assignments of error with citation of authorities as required by Civil Rule 83.-05(a), V.A.M.R. and are not therefore open, reviewable questions in this court. Cole v. Morris, Mo., 409 S.W.2d 668, 671; Marshall v. City of Gladstone, Mo., 380 S. W.2d 312, 314.

These are the background circumstances, particularly the physical surroundings, in which this action arose: Mr. and Mrs. Butts owned a plot of ground in Kingston, population 311, and across the back of the lot there was a woven wire fence. Above and along the fence the Missouri Power & Light Company maintained its 34,500-volt transmission lines, three uninsulated lines, one above the other, the bottom line being 23 feet 8 inches above the ground. There were no signs warning of the high voltage lines and no one had ever been personally warned of their danger. At the back of the lot, close to the fence, the Butts had a trailer which was supplied with electricity by the appellant. The respondent's husband, Harold Burk, age 46, was a Baptist minister and church friend of the Butts and in September 1964 they permitted Mr. Burk to also locate his aluminum trailer on the back of their lot, adjacent to and about 1½ feet from the fence. The appellant's serviceman was familiar with the location of the trailers and their proximity to the transmission line. Until April 1965 Nina Butts lived in the Burk trailer. The latter part of April the Burks' son, Aubrey, age 22 when the case was tried, moved into the trailer so that he could conveniently attend William Jewell College, he was then in his third year, and at the same time keep his part-time job in a Kingston grocery store. Aubrey described the aluminum trailer as being "ten feet tall" and placed about 1½ feet from the fence.

These are the circumstances in which Mr. Burk was electrocuted: On May 3, 1965, Mr. and Mrs. Burk and their other son, Gregory, age 12, drove from their home in Galt to Kingston for the express purpose of installing a television antenna for Aubrey. They brought the aluminum television mast and antenna in their automobile. The an-

tenna was about five feet wide, the appellant's serviceman saw it measured and he said that its length was 21 feet 7 inches—according to him there was a difference of about two feet in the height of the antenna and the lowest transmission wire. Aubrey, Gregory and their father undertook to install the antenna, with a crowbar they first dug or "punched" a hole in the ground about 1½ feet deep "close to the end of the trailer," at the southwest end near the fence, to receive the butt of the antenna mast. The mast and antenna were on the ground "(t)he very butt was right near the hole." They of course knew that the transmission wires were there, had even discussed them, "he (the father) didn't know, really, about them. He said we didn't figure we would be touching them, anyway" and the fact was, according to all the testimony, there was never any contact between the antenna and the transmission line. But the three of them attempted to lift the mast and antenna upright and insert the pole or mast in the prepared hole but they were unable to do so. And so Aubrey, 5 feet 10 inches tall, climbed to the top of the trailer to grasp the mast when the father and Gregory brought it into an upright position. Aubrey atop the trailer was 10 feet from the ground, and could reach with upraised arms 7½ feet. He said that had the lowest transmission wire been "directly over the trailer," standing on his tiptoes he could have "reached it." But the transmission line was not directly over the trailer, as stated it was over the fence line and Aubrey standing on the trailer was 3 feet or 3½ feet north of the wire. He said, however, that upright the bars or arms of the antenna would be beneath the electric line. In any event, with Aubrey atop the trailer and his brother and father raising the antenna Aubrey took hold of the mast and Mrs. Burk described the occurrence: "I seen them a-raising the antenna. And I hollered 'Watch out.' And whenever it got that far (indicating) from it—it was just a ball of fire, like that, that jumped—it did not hit the wire at all." Mrs. Burk said that the

antenna never came closer than two feet to the wire—"It didn't get no closer." The last Aubrey remembered was that he "was holding the antenna and standing" and was knocked unconscious and his father standing on the ground was electrocuted.

■ In this background it is necessary to again note and repeat certain fundamentals: In the maintenance of its high-voltage transmission lines through the Village of Kingston the appellant owed the general "duty to exercise the highest degree of care to keep electric wires in such condition as to prevent injury to others who lawfully may be in close proximity to them, which is the rule in this State." Gladden v. Missouri Public Service Company, Mo., 277 S.W.2d 510, 515. As a part of this general duty " 'an electric company employing wires highly charged with this subtle and violent agency in streets, highways, or other public places, is in duty bound either to insulate such wires or place them beyond the range of contact with persons rightfully using such streets, highways, or places, and to exercise the utmost care to keep them so.' " Failure to insulate was not submitted in this case but if it is not feasible or " 'it is impossible to fully insulate wires carrying such high voltage as these, then certainly the exercise of *the highest degree of care requires that such wires be so isolated that they will not be likely to cause injury to persons in places where they may lawfully be and may be reasonably expected.*' " (Emphasis supplied.) Erbes v. Union Electric Company, Mo., 353 S.W.2d 659, 664. And as to proximate cause and whether the appellant should have warned or "isolated," the two grounds of negligence submitted, the problem is whether "under all the facts and circumstances in evidence, defendant, in the exercise of the highest degree of care, *should reasonably have anticipated that someone lawfully in the area was likely to be injured as a result of contact with those high-voltage wires.*" Erbes v. Union Electric Company, 353 S.W.2d 1. c. 664; Lebow v. Missouri Public Service Company, Mo.,

270 S.W.2d 713, 715. And finally in connection with these general rules and in determining the two substantive issues of liability presented here, proximate cause and contributory negligence, it must be remembered that this is an appellate court and "must consider the evidence in the light most favorable to plaintiff, must accord to him the benefit of all supporting inferences fairly and reasonably deducible from the evidence, and must disregard defendant's evidence except insofar as it may aid plaintiff's case." Bridges v. Arkansas-Missouri Power Company, Mo.App., 410 S.W. 2d 106, 108; Lebow v. Missouri Public Service Company, Mo., 270 S.W.2d 713, 714.

▆▆▆ As stated, the appellant admits that there were no warning devices and its employees admitted that they had never warned anyone of the hazards inherent in a 34,500-volt transmission line and, of course, the dangers were not apparent from merely looking at the wires and as to foreseeability and all the issues involved here " 'it is the appreciation of, or the opportunity to appreciate, the peril in an instrumentality or condition, rather than a knowledge of its physical characteristics, that bars a plaintiff of recovery for negligence." Bridges v. Arkansas-Missouri Power Company, Mo.App., 410 S.W.2d 1. c. 111. Aubrey and his father saw and talked about the lines but as the appellant's lineman said it was not possible, even for him, to tell what kind of voltage is carried on a given line by looking at the wire. The National Electrical Safety Code, whether using the edition offered by the respondent or the one offered by the appellant, defines "isolation" in these terms: "To promote safety to the general public and to employees not authorized to approach conductors and other current-carrying parts of electric supply lines, such parts shall be arranged *so as to provide adequate clearance from the ground or other space generally accessible, or shall be provided with guards so as to isolate them effectively* from accidental contact by such persons." 1948 edition, § 214, p. 96. Specifically, as to clear-

ance of "supply conductors from buildings," here above or within one and one-half feet of the trailer and in connection with Aubrey's testimony, voltage supply conductors of 15,000 to 50,000 volts require a horizontal and vertical clearance of "10 feet plus 0.5 inch per kv in excess." (p. 122.) Even so, as was pointed out in the Gladden case as to the National Safety Code "these are minimum standards and do not establish the complete duty of defendant under all circumstances." 277 S.W.2d 1. c. 515.

Factually the distinguishing factor in this case, particularly with reference to the appellant's established negligence in the two respects submitted and proximate cause, and Hamilton v. Laclede Electric Cooperative, Mo., 294 S.W.2d 11, and Foote v. Scott-New Madrid-Mississippi Electric Coop., Mo.App., 359 S.W.2d 40, is that in those cases there was an actual touching or contact with the high voltage line. In the Foote case, perhaps even inadvertently, a boy 16 years 7 months of age threw a copper wire attached to a tin can over the electric line. In the Hamilton case, Hamilton had worked on "high lines" for a public utility but in addition the Hamiltons in removing a pipe and pump from a well had to tilt it or lean it 12 feet before it came in actual contact with the electric line. As stated, Mrs. Burk said that the mast and antenna never came closer to the lower wire than two feet when "a ball of fire * * * jumped" and the antenna fell to the ground. The appellant's lineman in the Kingston area said that he had seen electricity arc up to eight inches but while he would not feel safe within two feet of 34,500 volts he said, "I don't know how far it will arc." The appellant called from A. B. Chance Company an expert witness who described arcing and while he spoke of a "conductor" he said that once these conditions existed "it may go several feet." In Potter v. Sac-Osage Electric Cooperative, Inc., Mo., 335 S.W.2d 192, the electric current arced or jumped "eight inches to a foot I'd say." In Goddard v. St. Joseph Light and Power Company, Mo., 379 S.W.2d 565, a child sat

on the curbing watching tree trimmers and was burnned when a limb from the tree struck a low voltage wire which in turn came in contact with a high voltage wire and "An arc occurred and both lines were severed." In that case the court said, "The Power Company was charged with negligence in failing to post warning signs, in failing to erect guards to prevent contact between the 7200 volt line and the street light wire, *and in failing to isolate the 7200 volt line."* (Emphasis supplied.) As to basic negligence, liability and proximate cause the court concluded, "it was for the jury to determine whether or not the maintenance of the lines in the manner here involved was negligence, it was likewise a matter for the jury to determine whether or not such negligence caused or contributed to the injury of Nason." There is no claim here of an intervening cause but as to the tree trimmer's conduct the court said, "The evidence does not require the conclusion, as a matter of law, that Helton's negligence broke the chain of causation insofar as respondents are concerned." (379 S.W. 2d 1. c. 567, 569.) And of peculiar interest to the appellant is Laudwig v. Missouri Power & Light Company, 324 Mo. 676, 24 S.W.2d 625, in which as to arcing the court noted that "Moreover, defendant's manager stated on two separate occasions that he had known electrical current to arc or jump a distance of 6 to 8 feet, although this statement was denied by him when he took the stand."

As to both negligence and contributory negligence and the appellant's claim that there was no duty on its part to "foresee someone being injured by electrical energy from its power lines while erecting a TV antenna," in Gladden v. Missouri Public Service Company, supra, an adult climbed a tree on a public highway "to catch a tame parakeet that got out of its cage" and was injured by a wire running through the tree. On foreseeability the court had this to say: "While the tree in this case was not a nut or fruit tree (in which the reason to anticipate persons would be greater), nevertheless we do not think we can hold as a matter

of law that there was no reasonable basis to anticipate that an adult would be likely to be in a tree situated as this one was. On the contrary, we think this was a jury question." It is not necessary here to indicate from the other cited cases the conduct electric companies have been required to anticipate; over forty years ago (Kessler v. West Missouri Power Company, Mo. App., 283 S.W. 705) an electric utility contended that it was under no duty to anticipate that an amateur in installing a home-made radio aerial would be injured by an adjacent high voltage wire, but to note only one of the many observations peculiarly applicable to this case, the court said, "the radio, aerial, and ground wires were erected upon property owned by plaintiff and evidently with plaintiff's consent, and it was within the province of the jury to say whether defendant, with the care mentioned, could have reasonably anticipated that a radio would be installed in plaintiff's house, and in connection with the installation of the same some aerial wire or its accessories would be brought near the high-voltage wires of the defendant."

 In the detailed circumstances, as with foreseeability and proximate cause, it may not be said "that reasonable men might not fairly reach different conclusions on the evidence viewed most favorably from plaintiff's standpoint. We, therefore, may not declare as a matter of law that plaintiff's decedent was guilty of contributory negligence. We are of the opinion that the trial court properly left that question to the jury." Lebow v. Missouri Public Service Company, 270 S.W.2d 1. c. 717. Without further matching cases in the following cases, all previously cited in this opinion, it was held that negligence, including proximate cause, and the plaintiff's contributory negligence "was properly submitted to the jury for its determination" Erbes v. Union Electric Company, 353 S.W.2d 1. c. 666; Gladden v. Missouri Public Service Company, supra; Bridges v. Arkansas-Missouri Power Company, supra, Kessler v. West Missouri Power Co., supra,

and the arcing cases of Potter v. Sac-Osage Electric Cooperative, Inc., supra, particularly Laudwig v. Missouri Power & Light Co., supra.

For the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

FINCH, P. J., and EAGER & HOLMAN, JJ., concur.

DONNELLY, J., not sitting.