Cynthia Denise Ferguson MOSBY et al.,
Plaintiffs-Appellees,

v.

SOUTHWESTERN ELECTRIC POWER
COMPANY, Defendant-Appellant.

No. 81–2070
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 21, 1981.
Opinion on Rehearing
Dec. 24, 1981.

Herbert Boyland, Longview, Tex., for defendant-appellant.

Crawford Parker, Jr., Carthage, Tex., for plaintiffs-appellees.

Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.

AINSWORTH, Circuit Judge:

Plaintiffs Cynthia Mosby and her children instituted this Texas diversity suit against Southwestern Electric Power Company to recover damages for the death by electrocution of Elzie Ferguson, former husband of Mrs. Mosby and father to her two children. Mr. Ferguson died when he and two other men were attempting to erect a citizens band radio antenna at the site of a mobile home. The facts giving rise to this appeal are not in dispute. On September 12, 1976, Howard Haynes and Randy

McDaniel attempted to erect a CB radio antenna at the mobile home where they lived. Using a post hole digger, Haynes dug a hole beside the mobile home for the base of the antenna. He then put a bracket on the mobile home to secure the antenna to the side. Haynes then laid the 35-foot-long antenna out on the ground, and he and McDaniel unsuccessfully attempted to raise it. Elzie Ferguson was then recruited to assist, and together, the three men were able to raise the antenna to within two or three feet of being upright. At that point, it came in contact with an overhead electrical transmission line. Elzie Ferguson was killed instantly.

The line that the antenna touched, owned by the Southwestern Electric Power Company ("SWEPCO"), carried 7,200 volts of electricity. SWEPCO had an easement across the property for the purpose of transmitting electricity and two uninsulated lines, the lower one neutral, had been strung across the property since 1965. The height, location, and construction of the lines were proper and maintained in compliance with industry standards and the National Electrical Safety Code. SWEPCO's conductor wire was 26 feet 9 inches above the ground, and the neutral wire was 20 feet 7 inches above the ground. Since 1973 there had been a 10-foot 5-inch high mobile home beneath the wires. The National Electrical Safety Code requires 7,200 volt transmission lines to be 8 feet above, or 3 feet horizontal to, buildings. Either of these clearances is sufficient to meet code requirements. SWEPCO's line was 16 feet 4 inches above the mobile home.

The case was tried to a jury, the trial judge instructing the jury that, as a matter of law, both SWEPCO and Elzie Ferguson were guilty of negligence. The jury found 25 percent of the negligence of Elzie Ferguson and 75 percent of the negligence of SWEPCO contributed to the fatal accident. The jury's $1 million award of damages was apportioned and reduced to take into account Elzie Ferguson's contributory negligence. The court entered judgment for $450,000 in behalf of Mrs. Mosby and $300,000 in behalf of Mr. Ferguson's children,

plus interest and costs of suit. Defendant SWEPCO appeals here from the trial court's denial of its motions for an instructed verdict, judgment notwithstanding the verdict, and a new trial. Alternatively, the defendant urges us to reexamine the "grossly excessive" jury award. Because we conclude that the trial court should have granted the defendant's motion for an instructed verdict or for judgment notwithstanding the verdict, we do not reach the damages issue.

■ The litigants acknowledge that the key issue is foreseeability. In Texas the liability of an electric company for injuries resulting from contact with overhead power lines is based on the traditional concept of negligence requiring proof that the electric company could reasonably anticipate injury resulting from its conduct. *Houston Lighting & Power Co. v. Brooks*, 161 Tex. 32, 336 S.W.2d 603 (1960). The Texas courts have rejected attempts to gauge liability by stricter standards. *Erwin v. Guadalupe Valley Electric Co-op*, 505 S.W.2d 353 (Tex. Civ.App.—San Antonio 1974, writ ref'd n. r. e.) (rejection of strict or products liability theories in electrocution case).

*Brooks* is apparently the most recent opinion by the Texas Supreme Court on the rule of law in this case. There the plaintiff was injured while working on a building being constructed in close proximity to a high voltage line. The line met National Electrical Safety Code clearance requirements and had been in place several years prior to construction of the building. The electric company was aware of the construction of the building, but no request had been made to de-energize the line, and the company did not know of the proposed work by the plaintiff. The Texas Supreme Court held, as a matter of law, that these facts did not establish that the electric company could reasonably foresee contact with its line. The court's rationale could not have been clearer:

> There is nothing in the record to show any concern over the progress of the building from a structural standpoint on

the part of petitioner or its employees. The record wholly fails to show any facts which would be a basis for holding that petitioner could reasonably anticipate the timing for pouring concrete on top of the second floor. Of course petitioner knew the location of the lines in relation to the building, but since they were properly located in accordance with the National Electrical Safety Code the knowledge of such location in itself gave no reason to anticipate danger to respondent. Respondent wholly failed to establish any reason why petitioner should anticipate the injury of which he complains.

If the reason to anticipate injury is not established, then no duty arises to act to prevent such an unanticipated injury.

. . . .

There is no evidence that petitioner in this instance had actual knowledge of probable danger to respondent, and there are no facts in the record upon which to base constructive notice to petitioner. To hold petitioner liable under the facts of this case we would necessarily have to arbitrarily impute foresight to petitioner.

336 S.W.2d at 606. The court further observed, *id.* at 608, that it was unaware of *any* Texas case "holding the owner of previously franchised and established lines in accordance with the National Electrical Safety Code liable to a member of the public without there being shown some reason for the utility to anticipate danger to him . . . ."

Our position is much like that faced by the Texas Supreme Court in *Brooks.* All that plaintiffs proved at trial was that SWEPCO was aware that (1) a mobile home was beneath its lines, and (2) it is dangerous to raise an antenna into an electric line.[1] In essence, the plaintiffs argue that an electric company should anticipate fatal contact with its lines from the mere presence of a residence beneath the lines. Like the Texas Supreme Court, we are unaware of any Texas case that reaches or even implies such an extraordinary result. None of the cases cited by the plaintiffs support a finding of negligence on the meager evidence here,[2] and there is considerable Texas law standing precisely for the contrary proposition that an electric company is not bound to anticipate contact with its lines when these are at a proper height and the company is without knowledge of the proposed activity near its lines.[3] The defendant has

1. The nature of the evidence presented on this point suggests just how tenuous was the proven "knowledge" on the part of SWEPCO. At trial, a SWEPCO employee testified that he would not live in a mobile home under a 7,200-volt line. SWEPCO's expert witness admitted that there was a danger of people contacting electric lines with antennae, and SWEPCO's general manager testified that he was aware of newspaper accounts of accidents such as these occurring all over the United States. Finally, there was evidence presented that SWEPCO had, for some time, broadcast general warnings of the dangers of raising antennae near high-voltage transmission lines. There was no evidence that anyone had ever attempted to erect a CB antenna at this mobile home or in this area at any time in the past. SWEPCO had not been notified of the work to be done, nor had it been requested to de-energize, cover, or take any other action with respect to its lines.

2. *Texas Power & Light Co. v. Culwell,* 34 S.W.2d 820 (Tex.Com.App.1931), and *Texas Public Serv. Co. v. Armstrong,* 37 S.W.2d 294 (Tex.Civ.App.—Austin 1931, writ ref'd n. r. e.), involved insulated service wires that had negligently been allowed to have constant physical contact with other objects until the insulation had worn off. *City of Brady v. Finklea,* 400 F.2d 352 (5th Cir. 1968), involved a rotted crossarm, and in *Texas Power & Light Co. v. Jacobs,* 323 S.W.2d 483 (Tex.Civ.App.—Waco 1959, writ ref'd n. r. e.), the electric lines were not in compliance with National Electrical Safety Code clearance requirements. Plaintiffs' argument based on *Texas Power & Light Co. v. Holder,* 385 S.W.2d 873 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.), is completely specious. In *Holder* it was admitted that the electric line causing the accident crossed a roadway and was below statutory requirements for lines *across* roadways. In referring to the statute, the Court of Civil Appeals inadvertently referred to the statute as applying height requirements for lines "along or across" roadways, and it was this dictum misstating the law that was disapproved in the Texas Supreme Court per curiam opinion, 393 S.W.2d 821 at 822.

3. *American General Ins. Co. v. Southwestern Gas & Electric Co.,* 115 F.2d 706 (5th Cir. 1940) (although electric company had been notified prior to accident that work would be performed and had had one of its engineers present at the site, company could not have reasonably fore-

also cited an impressive array of cases from other jurisdictions that have reached the same results as the Texas courts.[4]

■ Plaintiffs have only shown that a fatal accident was within the range of possibilities. As *Brooks* shows, foreseeability requires more. Note that we are not saying that compliance with the National Electrical Safety Code, standing alone, frees a power company from liability. As defendant correctly points out in its brief, code compliance is one of the many facts in this case negating a conclusion that SWEPCO should have anticipated contact with its line. Here there was undisputed evidence that the line was properly designed and met the code clearance requirements even after the mobile home was placed beneath it. The hazard of which the power company was shown to be aware was only the universal danger of contact with electric lines. The unfortunate accident that occurred had little to do with the mobile home's location and, indeed, the accident might have happened regardless of where the mobile home was located. Evidence of code compliance is a proper factor to consider in determining if a power line meets the common law standard of care in a particular case. *City of Brady v. Finklea*, 400 F.2d 352, 356 (5th Cir. 1968).

■ Plaintiffs' argument that the defendant should have placed a warning on the line is also without merit. There is considerable evidence in the record that Mr. Ferguson and his friends, while uncertain of whether the line was "live," were aware of the danger of striking the line with the antenna and sought to avoid it. In addition, plaintiffs did not here challenge the trial court's instruction to the jury that, as a matter of law, Mr. Ferguson was guilty of negligence in contacting the line. That instruction, as defendant points out in its brief, necessarily encompasses awareness of the line and the danger in contacting it. Even if we assume that the trial court was wrong on this, a claim of ignorance of the properties and dangers of electricity is not

seen that a crane would hit the power line; instructed verdict in favor of power company affirmed); *Wilson v. Texas Electric Serv. Co.*, 265 S.W.2d 624 (Tex.Civ.App.—El Paso 1954, writ ref'd n. r. e.) (instructed verdict in behalf of power company affirmed, as company could not have foreseen that crane would strike power line; company should have been notified and asked to turn off the electricity); *Havens v. Dallas Power & Light Co.*, 256 S.W.2d 689, 691 (Tex.Civ.App.—Dallas 1953, writ ref'd n. r. e.) (constructive knowledge of mere presence of building near electric line did not create any duty on part of power company).

4. In *Georgia Power Co. v. Williams*, 132 Ga. App. 874, 209 S.E.2d 648 (1974), *cert. denied* (Ga.), two men were injured while attempting to raise a TV antenna near a house. The evidence established that the house had been built first and that the line clearances were in compliance with the National Electrical Safety Code. The court held that, as a matter of law, the defendant's knowledge of the close proximity of the wire to the house and the area custom of raising antennae were insufficient to raise a jury issue on the foreseeability of the accident to the power company. *See also Tallahatchie Valley Electric Power Ass'n v. Clinton*, 347 So.2d 348 (Miss.1977); *Vital v. Housing Authority of New Iberia*, 360 So.2d 1182 (La.App.1978); *Daniel v. Oklahoma Gas & Electric Co.*, 329 P.2d 1060 (Okl.1958); *Johnson v. Johnson City*, 41 Tenn.App. 148, 292 S.W.2d 794 (1956).

Cases cited by plaintiffs from other jurisdictions are easily distinguishable. In *Burk v. Missouri Power & Light Co.*, 420 S.W.2d 274 (Mo.1967), the defendant was electrocuted while standing on top of a trailer. A witness testified that the antenna got no closer than two feet from the wire. There was testimony that the electric line carried 34,500 volts and could arc several feet. The court said that the case was factually distinguishable from those cases where there is actual touching of the wire. *Id.* at 278. In *Mississippi Power & Light Co. v. Shepard*, 285 So.2d 725 (Miss.1973), three different antennae had been used at a house by former residents, and antenna/electric line contact had occurred nearby prior to the accident. The court said, "practically every home" in the town had an antenna attached to its house. The later case of *Tallahatchie Valley Electric Power Ass'n v. Clinton*, 347 So.2d at 351, described *Shepard* as involving a "veritable forest of television antennas" and said that this was a distinguishable fact that affected the electric company's duty. In the case here, as we have noted, there was no proof that anyone at the mobile home or in the area had ever raised an antenna near SWEPCO's electric lines.

worthy of credence in this day and age.[5] Under Texas law, there is no duty to warn a person who is already aware of a danger. *Kenny v. El Paso Electric Co.*, 371 S.W.2d 777 (Tex.Civ.App.—El Paso 1963, writ ref'd n. r. e.).

Admittedly, an electric company is aware that people and objects contact uninsulated wires. Yet this hazard exists wherever lines exist, and Texas grounds liability only in cases of negligence. Absent an indication that the Texas legislature or the Texas courts have done so, federal courts are not to transmute a state's traditional concept of negligence into a species of strict liability. This is, in effect, what the plaintiffs successfully asked the trial court to do here. We decline the invitation.

■ Viewing all the evidence in this case in the light and with all reasonable inferences most favorable to the plaintiffs, as we must do, *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969), we conclude that the defendant could not have reasonably anticipated this accident. Reasonable and fair-minded persons in the exercise of impartial judgment could only arrive at this conclusion, and the trial court should have granted defendant's motion for a directed verdict or, alternatively, judgment notwithstanding the verdict.[6]

REVERSED and RENDERED.

ON PETITION FOR REHEARING

Before CLARK, Chief Judge, and RANDALL, Circuit Judge *.

PER CURIAM:

The court has concluded that its consideration of this case would be benefited by oral argument. Accordingly, the panel opinion is withdrawn. The Clerk is instructed to set the case on the oral argument calendar and to establish a supplemental briefing schedule addressing the arguments raised in the plaintiffs-appellees petition for rehearing.

---

5. *See, e. g., Cates v. Beauregard Electric Cooperative, Inc.*, 328 So.2d 367, 370 (La.1976): "Electric wires on a pole are an announcement of danger to almost anyone smart enough and old enough to get himself in contact with a wire 28 feet above the ground."

6. It goes without saying that plaintiffs were certainly not entitled to an instruction that the defendant was negligent as a matter of law.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.