NO. 07-96-0062-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 3, 1996

_____

ARTHUR MARTINEZ, ALICE MARTINEZ, AND ALICE MARTINEZ AS NEXT
FRIEND OF MARTY MARTINEZ AND MARISSA MARTINEZ, APPELLANTS

V.

CITY OF LUBBOCK, APPELLEE

_____

FROM THE 137TH JUDICIAL DISTRICT COURT OF LUBBOCK COUNTY;

NO. 92-538,121-C; HONORABLE CECIL G. PURYEAR, JUDGE

_____

Before BOYD and QUINN, JJ. and REYNOLDS, SJ.[*]

In three points, appellants Arthur Martinez, Alice Martinez, Individually and as Next
Friend of Marty Martinez and Marissa Martinez contend that the trial court erred in rendering
a take-nothing summary judgment in their suit against appellee the City of Lubbock (the City).
For reasons hereafter expressed, we reverse and remand.

This appeal arises from a suit filed by appellants against the City seeking recovery for
electrical shock injuries to Arthur Martinez suffered in Lubbock. Appellants contend the City was

---

[*]Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1996).

negligent in failing to properly inspect the electrical wiring which caused the shock and/or failing to finish-out construction of the Science Spectrum space, and by failing to determine that such wiring or construction was negligently done and was in violation of City construction codes.

Arthur Martinez was working as a laborer, remodeling a portion of a building leased by Smith & Fitzpatrick (S&F) for the purpose of establishing a restaurant. The S&F area was thought to be without electricity; however, on June 7, 1990, Arthur Martinez suffered an electrical shock when he cut an electrical conduit while working on the premises of the 50th Street Caboose.

It was later discovered that although the electrical power to the premises had been turned off, the hot wire was the power source for an air conditioning compressor servicing the adjacent Science Spectrum space. The wire providing electricity to the compressor, which was mounted on the roof of the building, was routed through the wall dividing the Science Spectrum space from the premises, and was serviced by a separate electrical power source which had not been turned off.

Appellants, in this appeal, raise three points of error. First, they contend the trial court erred in granting the City's motion for summary judgment, because the evidence raises fact issues that concern the City's negligence in failing to properly inspect the wiring in question and failing to determine that such wiring violated relevant codes. Next, they argue any reliance by the trial court on the City's alleged immunity would be in error, because immunity was neither advanced as a ground for summary judgment nor was there any summary judgment evidence relating to an immunity defense. Finally, they urge, the trial court erred in overruling appellants' objections to the deposition excerpts of Mike Temple and David King.

2

The standards for appellate review of a summary judgment are now axiomatic. As explicated by our Supreme Court they are:

> 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
>
> 2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
>
> 3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). In order for a defendant to be entitled to summary judgment, he must disprove, as a matter of law, at least one of the essential elements of each of the plaintiff's causes of action, *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991), or must establish one or more defenses as a matter of law. *Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443, 445 (Tex. App.--Amarillo 1985, writ ref'd n.r.e.).

In seeking its summary judgment, the City alleged it owed and breached no duty to appellants because the wiring was "within Code" and legal, and Arthur Martinez (and those directing him) was negligent in having an unlicensed individual perform demolition of electrical fixtures.

In considering appellants' first point of error, we note that the first prerequisite of establishing tort liability is to show existence and violation of a legal duty owed to the plaintiff by the defendant. The existence of a legal duty is a question of law for the court, although in some instances it may require the resolution of disputed facts or inferences which are inappropriate for legal resolution. *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991). Thus, our first determination is whether the summary judgment evidence was

sufficient to establish that the City did not owe a legal duty to appellants to inspect the wiring for Code violations.

In *Community Public Service Co. v. Dugger*, 430 S.W.2d 713, 717 (Tex.Civ.App.--Texarkana 1968, no writ), the court recognized a general "duty from those who handle electricity to protect those who come into proximity therewith, and this duty is proportionate to and commensurate with the dangers involved." *Id.* at 717.

In addition, § 6-122(11) of the Lubbock Electrical Code establishes that the inspector/building official "or his designated representative, qualified in electrical code inspections . . . shall have the duty of inspecting any and all electrical work for code compliance." Thus, the City has the self-imposed duty of inspecting all electrical work.

Having established the City owed a legal duty to appellants, and passing for the moment the question whether the City properly claimed governmental immunity in the summary judgment proceeding, we next consider whether the summary judgment evidence was sufficient to establish as a matter of law that the City did not violate that duty.

In defending its summary judgment, the City presents three primary arguments. First, citing *Taylor v. Holland Electric Co.*, 386 S.W.2d 598 (Tex.Civ.App.--Beaumont 1965, writ dism'd), the City argues that Arthur Martinez's "alleged negligence establishes as a matter of law that the plaintiffs are entitled to no money." Second, the City maintains that the National Electric Safety Code (NESC) is *the* yardstick in determining whether or not electrical wiring meets the common law standard of care in a particular case (a breach of duty question). Third, the City contends it had no basis to reasonably foresee that the plaintiff would violate the electrical code (a question of proximate cause).

4

This first argument may be disposed of by reference to the date of the *Taylor* case -- 1965. In that year, the jury's finding of contributory negligence on the part of Holland deprived him of recovery; however, in 1973, the legislature substituted comparative negligence which had the effect of removing the former absolute bar to recovery by a plaintiff if the factfinder found contributory negligence. Tex. Rev. Civ. Stat. Ann. art. 2212a (Vernon 1973), now Tex. Civ. Prac. & Rem. Code, § 33.001 (Vernon Supp. 1996). This is true because to effectuate the concept of comparative negligence, if a factfinder finds a plaintiff was contributorily negligent, it must balance that negligence compared to any negligence on the part of the defendant.

In response to the City's second argument, the courts have been divided over the question whether the NESC is *the* yardstick for determining whether an individual has met the common law standard of care or whether it is merely one of the factors in determining negligence. We think the courts which have decided it is merely one of the factors to be considered in determining negligence have arrived at the correct result.

The City cites *Mosby v. Southwest Electric Power Co.*, 659 F.2d 680 (5th Cir. 1981), in support of using the NESC as *the* yardstick for determining negligence, but *Mosby* actually states, "we are not saying that compliance with the National Electric Safety Code, standing alone, frees a power company from liability . . . ." *Id.* at 683. Code compliance is one of many facts. *Id.*

This same concept was also stated by the court in *City of Brady, Texas v. Finklea*, 400 F.2d 352 (5th Cir. 1968). In that case, the court noted that evidence of compliance or non-compliance with the NESC may be considered in determining if electrical systems meet the common law standard of care but went on to say, ". . . compliance with the Code, assuming there

5

was compliance, does not ipso facto free the City of negligence. The provisions of the [NESC] provide broad *minimum* requirements for electric companies to follow." *Id.* at 356 (emphasis added). We recognize that these decisions by the federal intermediate court are not binding upon us, but the reasoning employed by the court is sound. In the absence of applicable state authority, we follow that reasoning.

Therefore, there are two distinct fact issues which must be determined in this case before the breach of duty issue can be resolved. First, the summary judgment evidence reveals a difference between the opinions of Jorge Lozano, David King, and Mike Temple regarding the question of whether the wiring configuration was a violation of the NESC. Second, if the configuration is found to be in compliance, there is also a fact question whether, under these circumstances, the existence of the wiring constituted a danger to individuals such as the S&F workers.

Finally, there is a fact issue concerning the question of proximate cause. Proximate cause consists of cause in fact and foreseeability. *Union Pump Co. v. Albritton*, 898 S.W.2d 773, 775 (Tex. 1995). Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury that would not otherwise have occurred. *Prudential Ins. Co. v. Jefferson Assocs. Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995).

It is the City's position that even if it failed to properly inspect the electrical work, appellants cannot establish that that omission was a cause in fact of Arthur Martinez's injury. In that connection, we note that in the *Fort Bend* case, the Supreme Court recognized that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person

or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Fort Bend,* 818 S.W.2d at 396, quoting *Restatement (Second) of Torts* § 324A (1965).

We also note, that in his affidavit, Jorge Lozano says:

Based on my education, training and experience, the City of Lubbock violated Sections 230-2, 230-3 and 230-24 of the National Electric Code and, therefore, the Lubbock Electrical Code. If the Code had not been violated, Arthur Martinez would not have been shocked. In other words, the City of Lubbock's Code violation caused the electrical shock to Arthur Martinez.

Thus, the summary judgment evidence is sufficient, at the very least, to show the existence of a fact question of whether the City's omission was a substantial factor in bringing about Arthur Martinez's injuries.

The second aspect of proximate cause is foreseeability. *Union Pump,* 898 S.W.2d at 775. Foreseeability means the actor, as an ordinary reasonable person, should have anticipated the dangers his negligent act created for others. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). If the reason to anticipate injury is not established, then no duty to act to prevent such an unanticipated injury arises. *Mosby,* 659 F.2d. at 682; *Houston Lighting & Power Co. v. Brooks*, 161 Tex. 32, 336 S.W.2d 603, 606 (1960). There is "neither a legal nor moral obligation to guard against that which cannot be foreseen." *Id.* However, the defendant need not have foreseen the exact injury to any particular person but merely needs to reasonably foresee that "some like

injury might and probably would result." *Texas Power & Light Co. v. Holder*, 385 S.W.2d 873, 882 (Tex.Civ.App.--Tyler 1964, writ ref'd n.r.e.).

The summary judgment evidence indicates the City was aware, through the issuance of a structural permit,[1] that remodeling construction was contemplated in the S&F area. The evidence also demonstrates that the wire providing electricity to the Science Spectrum's air conditioning compressor was mounted on the roof of the building, routed through a partition dividing the Science Spectrum space from the S&F space, through which no electricity was thought to run.

In *Erwin v. Guadalupe Valley Elec. Co-Op.*, 505 S.W.2d 353 (Tex.Civ.App.--San Antonio 1974, writ ref'd n.r.e), the court commented that "a transmission line used as a conduit for high-voltage electrical current at a place where it is reasonably foreseeable that people may come into contact with the line and suffer injury will support a finding of the creation of an unreasonably dangerous condition." *Id.* at 355. The court concluded that a risk derives from the placement of the wiring, and thus imposes liability based on negligence. *Id.*

A jury could find that the City, in allowing a high voltage wire to be electrified in an area where remodeling is contemplated, is dangerous and foreseeable as suggested by the Lozano affidavit. Section 230-2 of the NESC, quoted by Lozano, prohibits conditions where a wiring configuration serves one area but is located in an area not being served. In his affidavit, Lozano avers, "[t]his section is essential to protect personnel should one service be disconnected and people led to believe that all electrical service to the building or structure had been disconnected." Thus, there was summary judgment evidence not only that the dangerous condition was

---

[1]Whether the permit was an electrical permit in addition to a structural permit was not established with certainty.

8

foreseeable, but also that the dangerous condition was the cause in fact of Arthur Martinez's injuries.

In addition, the Texas Supreme Court has found that a duty to warn arises when there is a failure to comply with applicable codes or ordinances governing placement of the lines *or* there is reason to anticipate that the lines would be dangerous to the plaintiff. *Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784, 786 (Tex. 1988). The summary judgment evidence is not sufficient to show there could be no fact issues to be decided by a jury. In such instances, summary judgment is generally inappropriate. *Smith v. Bolin*, 153 Tex. 486, 271 S.W.2d 93, 97 (1954).

Having made that decision, we must next decide if, under the summary judgment record, the City showed it was entitled to the benefit of governmental immunity. Predictably, the City answers that question affirmatively, while appellants contend the City not only failed to include immunity as a basis but that the summary judgment evidence fails to support that defense.

The functions of a governmental entity fall into one of two categories. Those functions which the municipality carries out as an arm of the state for the purpose of serving the general public are termed "governmental functions." In this capacity, a municipality is afforded the state's sovereign immunity, except to the extent the state has waived its immunity under the Texas Tort Claims Act (the Act).[2] *Houston v. Southwest Concrete Construction, Inc.*, 835 S.W.2d 728, 730 (Tex.App.--Houston [14th Dist.] 1992, writ denied). In its second capacity, a municipality undertakes functions which are not integral to its function as an arm of the state. *See, e.g., City of Fort Worth v. George*, 108 S.W.2d 929, 931 (Tex.Civ.App.--Fort Worth 1937, writ ref'd).

---

[2]Tex. Civ. Prac. & Rem. Code Ann. § 101.021 *et seq.*

The sovereign immunity of the state does not protect a municipality from liability for actions taken in a proprietary capacity because those actions are undertaken for the benefit of private enterprise or the residents of the municipality rather than for the benefit of the general public. *Id.*

Inspections and enforcement of building codes are considered governmental functions. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(28) (Vernon Supp. 1996). Ordinarily, then, the City would owe no duty to appellants individually with respect to inspection of wiring or enforcement of the applicable building codes, except to the extent allowed by the Act. Tex. Civ. Prac. & Rem. Code Ann. § 101.025 (Vernon 1986); *see State Dept. of Highways and Pub. Transp. v. Dopyera*, 834 S.W.2d 50, 54 (Tex. 1992), *cert. denied,* 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 567 (1992).

It is established that governmental units litigate as any other party in Texas courts and must observe the same rules that bind all other litigants, which include the laws and rules governing pleadings and burden of proof. *Davis v. City of San Antonio*, 752 S.W.2d 518, 519 (Tex. 1988). A summary judgment motion must define the issues and put the non-moving party on notice with adequate information to oppose the motion. *Eckler v. Gen. Council of Assemblies of God*, 784 S.W.2d 935, 937 (Tex. App.--San Antonio 1990, writ denied). Thus, a municipality must plead immunity in its motion for summary judgment or that defense is waived. *Id.*; *Bullock v. Regular Veterans Ass'n. Post 76*, 806 S.W.2d 311, 315 (Tex. App.--Austin 1991, no writ).

The City argues that its stated grounds of "no duty" is sufficient notice to appellants that such grounds necessarily include an analysis of the City's liability and immunity under the Act. However, Rule 166a(c) of the Texas Rules of Civil Procedure requires that "the motion for summary judgment shall state the *specific* grounds therefor." (emphasis added). In *McConnell*

10

*v. Southside Indep. School Dist.*, 858 S.W.2d 337, 339 (Tex. 1993), the Supreme Court required that grounds for the summary judgment be in the motion and any ground not in the motion not be considered even if raised in a supporting brief. Here, in neither the motion nor in its supporting brief does immunity appear.

Because the immunity defense was not presented to the trial court as grounds for summary judgment, it is not necessary that we discuss it here. *See Harkinson v. Trammell Crow Co.*, 915 S.W.2d 28, 34 (Tex. App.--Dallas 1995, no writ). This is true because in the words of the *McConnell* court, " an appellate court cannot `read between the lines, infer or glean from the pleadings or the proof' any grounds for granting the summary judgment other than those grounds expressly set forth before the trial court [in the motion for summary judgment]." 858 S.W.2d at 343; *See also Clark v. First National Bank of the Highlands*, 794 S.W.2d 953, 956 (Tex. App.--Houston [1st Dist.] 1990, no writ) (quoting *Great-Ness Professional Serv., Inc. v. First Nat'l Bank of Louisville*, 704 S.W.2d 916, 918 (Tex. App.--Houston [14th Dist.] 1986, no writ)). Appellants' second point is sustained.

Because we have sustained appellants' first two points, which requires reversal and remand of this case, that action obviates the necessity for discussion of appellants' third point.

In sum, appellants' first and second points are sustained, the trial court judgment is reversed and the cause remanded to the trial court.

John T. Boyd
Justice

Do not publish.

11