360 So.2d 1182 (1978)
George VITAL et al., Plaintiffs and Appellants,
v.
HOUSING AUTHORITY OF the CITY OF NEW IBERIA et al., Defendants and Appellees.
No. 6456.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1978.
Haik, Broussard & Haik by Theodore M. Haik, Jr., New Iberia, for plaintiff-appellant.
Landry, Watkins, Cousin & Bonin, Jacob D. Landry, New Iberia, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
CULPEPPER, Judge.
This is a suit for damages for the death by electrocution of Brian Vital and his brother, Nelson Vital. They were erecting a television antenna in the backyard of the premises which their parents leased from the defendant, Housing Authority of the City of New Iberia. The antenna struck an uninsulated electrical power line, causing electrical shock to both boys, from which they died. Named as a defendant, in addition to the Housing Authority, is Central Louisiana Electrical Company (CLECO) which supplied electric power to the housing project. CLECO filed a motion for summary judgment on the basis that it merely sold power to the Housing Authority at the Authority's meter, that the Authority distributed the power to the individual dwellings in the housing project through lines constructed, owned, operated and maintained by the Housing Authority and not by CLECO, and that the antenna struck one of the Housing Authority's lines.
On appeal, plaintiffs contend that CLECO, through its employees, knew or should have known that there were many television antennas in the housing project in close proximity to the uninsulated electric lines, and that CLECO was negligent in continuing to furnish power to the Housing Authority, when it knew or should have known of these hazardous conditions.
*1183 CLECO attached to its motion for summary judgment the affidavit of Roy J. Gravel, its Southern Division Manager. This affidavit states:
"CLECO did not construct, have constructed, has never owned and has never maintained the power lines, real estate or appurtenances at the location at which the alleged incident of May 25, 1976, which forms the basis of this suit, occurred, that being the housing project of the Housing Authority of New Iberia, Louisiana (the Authority).
"CLECO does not serve the individual inhabitants of said Authority or housing project but merely sells power to the authority at the meter located on Fulton Street at a point approximately 200 feet South of the intersection of Landry Drive and from the said meter the Housing Authority distributes the power to the individual dwellings through the Authority's lines. The Authority either installed or had installed, owns, operates and maintained the entire electric distribution system of the housing project on the Authority's side of the meter on Fulton Street. Ownership of electricity passes from CLECO to the Authority at the aforesaid meter on Fulton Street."
In opposition to CLECO's motion for summary judgment, plaintiffs filed affidavits by persons who live in or near the Housing Authority. These affidavits state that in the housing project there are many TV antennas attached to clothes lines, which clothes lines and antennas are in close proximity to uninsulated electrical wires; that the affiants had seen CLECO employees on the grounds of the housing project on many occasions; and that it is common knowledge to everyone who lives in the project, and is very evident to the naked eye by any reasonable man, that there are TV antennas in close proximity to electric wires.
LSA-C.C.P. Article 966 provides that summary judgment shall be rendered " . . . if the pleadings, depositions and admissions on trial, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Jurisprudence construing this article holds that summary judgment should not be used as a substitute for trial on the merits, that the function of the court is not to determine the merits of the issues raised but only whether there is a genuine issue of material fact, that any doubt should be resolved against the granting of summary judgment, that, as a general rule, summary procedure is not appropriate to prove subjective facts, such as intent, good faith and knowledge, and that the mover for summary judgment has the burden of proof. Walker v. Graham, 343 So.2d 1171 (La.App. 3rd Cir. 1977); Berger v. Firemen's Fund Insurance Company, 305 So.2d 724 (La.App. 4th Cir. 1974); and Fontenot v. Aetna Insurance Corporation, 225 So.2d 648 (La.App. 3rd Cir. 1969).
Plaintiffs argue that under Hughes v. Louisiana Power & Light, 94 So.2d 532 (La.App. 1st Cir. 1956) CLECO had a duty to inspect the electrical wires and appliances, such as television antennas, and that through inspections CLECO should have known of the hazardous conditions. We cannot agree that the Hughes case requires the supplier of electrical power to inspect the electric wires or appliances of the purchaser of power. On the contrary, the Hughes case clearly holds that, as a general rule, there is no duty by the power company to inspect the premises of its customers for hazards. The facts in Hughes were that lightning struck the defendant power company's transformer near the plaintiff's home. The transformer burned out and a power surge burned out the electric fuse in plaintiff's home. The power company's service employees went to the plaintiff's home and replaced the fuse and, after replacing the transformer, restored power to the line. Damaged insulation on the wires in plaintiff's home caused the fire. The court held that although as a general rule the furnisher of electrical power has no duty to inspect the premises of its customers, under these unusual circumstances the service men who replaced the burned out fuse should have known that the electrical surge, following the bolt of lightning which struck the transformer, may have damaged the insulation *1184 the wires in plaintiff's house, and that because of this they should have known it was dangerous to resume electrical services without inspection. We express no opinion as to the result reached in the Hughes case. In any event, Hughes is distinguished from the present matter in that here there were no such unusual circumstances which required an inspection by the defendant power company before it restored power.
Plaintiffs argue further that the opposing affidavits by residents of the housing project state that CLECO's employees were seen on the grounds of the Housing Authority on many occasions, and that these employees saw or should have seen the many television antennas in close proximity to the uninsulated electric wires, and should have realized the hazard and discontinued electric service. Plaintiffs say CLECO's affidavit is silent as to whether its employees knew or should have known of these hazards.
Accepting as true the statements in plaintiffs' affidavits that CLECO employees were seen on the grounds of the housing project on many occasions, and that they saw or should have seen the television antennas in close proximity to uninsulated electric wires, this did not, as a matter of law, create a duty on the part of CLECO to discontinue furnishing electric power to the project.
The rule of law as to the power company's knowledge of hazards on customers' premises is stated in the Hughes case, supra, as follows:
"`Accordingly, where wiring or other electrical appliances on private premises are owned and controlled by the owner or occupant of such premises, a company which merely furnishes electricity is not responsible for the insulation or condition of such wiring or appliances and is not liable for injuries caused by their defective condition, to such owner or occupant, * * *. [However,] "knowledge of the defective and dangerous condition of a customer's appliances will charge even a mere generator and supplier of electricity with liability for consequences, where current is thereafter supplied to such defective and dangerous appliances, in which case it is the energizing of the line with knowledge of the conditions, and not the conditions themselves, which forms the basis of liability", 29 C.J.S., Electricity, § 57, pp. 611-613. See also 18 Am. Jur.Verbo "Electricity", Sections 46-53, 62, 85, 100.'"
We construe this general statement of the law to mean that where the power company has knowledge of a condition on a customer's premises which will clearly cause immediate danger unless the line is de-energized, then the power company has the duty to use reasonable means to do so. In the present case, mere knowledge by CLECO employees, as stated in plaintiffs' opposing affidavit, that TV antennas in the project were "in close proximity" to uninsulated electric wires, would not be knowledge of a condition which is clearly an immediate danger of injury sufficient to charge the power company with the duty to de-energize the line. The presence of TV antennas "in close proximity" to uninsulated electric wires is not a hazard unless an antenna contacts a wire. Wherever there is electric power, there is always a certain amount of danger. But the social utility of the electric power must be balanced against its hazard. See the full discussion of these theories of negligence in Allien v. Louisiana Power & Light Company, 202 So.2d 704 (La.App. 3rd Cir. 1967).
To hold power companies liable wherever any of their employees know of a condition on a customer's premises which could possibly result in injury would place an unreasonable burden on them as to conditions which they did not cause, and over which they have no control except to cut off the power.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs-appellants.
AFFIRMED.