CUTRER, Judge.
This is a suit for damages due to injuries resulting from the electric shock received by Wallace J. Jensen, Jr. Suit was brought by Wallace J. Jensen, Sr., individually and as administrator of the estate of Wallace J. Jensen, Jr. Named as defendants were The Housing Authority of the City of Crowley (hereinafter referred to Housing Authority); Fitch, Holdredge, Bisoñe and Holcombe, Inc. (hereinafter referred to as Fitch); Central Louisiana Electric Company, Inc. (hereinafter referred to as CLE-CO); Jerrie L. Breaux; Kenneth Loftin and Cleveland Construction Company.[1] A third-party demand was filed by Fitch against CLECO and the other defendants. In response to the plaintiff’s demand and the demand of the third-party plaintiff, CLECO filed a motion for summary judgment seeking dismissal of the claims against it. This motion by CLECO was granted and William J. Jensen, Sr., and the third-party plaintiff, Fitch, appealed.
On September 10, 1977, Wallace J. Jensen, Sr., and the other co-defendants, Breaux and Loftin, were attempting to remove a C.B. radio antenna which was mounted on the eave of the Jensen residence. During this process, the antenna fell on electric wires running through the branches of some trees. Wallace J. Jensen, Jr., attempted to assist in removing the antenna. When.he took hold of it, he received an electric shock causing injuries for which damages are sought. This accident occurred at the Westwood Apartments in which the plaintiff resided and which are owned by the Housing Authority of the City of Crowley, Louisiana.
The sole issue on appeal is whether the trial court erred in granting the motion for summary judgment.
We have carefully reviewed the record and have concluded that there is no issue of material fact. Clearly, the trial court correctly granted CLECO’s motion for summary judgment.
The deposition of J.D. Miller, executive director and administrator of the Housing Authority, reflects that he had been employed by the Housing Authority for twenty years as of June 1983. He stated that the Housing Authority employed Fitch as architects to design the Westwood Housing complex in the City of Crowley. Cleveland Construction Company was employed to construct the project. The construction be *289 gan in approximately 1970 and was completed in 1972.
Miller stated that the Housing Authority was the owner of the distribution system. The Housing Authority had the exclusive responsibility of maintaining the system including the cutting of any necessary tree limbs.
Miller testified that CLECO’s only involvement with the project was to act as the supplier of the electricity. CLECO sold electricity to the project by installing a meter on a pole at the entrance, which meter fed the electricity to the Housing Authority’s electrical distribution system. When the electricity left the meter it became the property of the Housing Authority. Additionally, the Housing Authority would, on some occasions, call CLECO to make some necessary repair on their system. This repair work was done by CLE-CO on a job-to-job basis and CLECO would bill the Housing Authority for each job as it was performed. CLECO had no maintenance contract with the Housing Authority.
In the record also is an affidavit by Phillip Caffery, CLECO manager of operations in the City of Crowley. The facts set forth in this affidavit support the facts as reiterated by Miller. They state as follows:
“Central Louisiana Electric Company does not serve the individual inhabitants of Westwood Apartments located on property owned by the Housing Authority of the City of Crowley but merely sells electrical power to the said authority at its meter located at one of the entrances to the housing project; and from said meter the aforesaid Housing Authority distributes the electrical power to all of the individual dwellings and users throughout the Housing Authority’s electrical distribution lines... Central Louisiana Electric Company does not maintain any of the electrical wires or transmission lines of the electrical distribution system on the Housing Authority property. Similarly, Central Louisiana Electric Company does not maintain any of the electrical appliances such as an-tennaes, on the Housing Authority premises. That only upon specific request from someone at the Housing Authority of the City of Crowley, do employees of Central Louisiana Electric Company occasionally go onto the premises of the Housing Authority for the purpose of performing work to restore service due to a power failure. Such work of restoring service by employees of Central Louisiana Electric Company is performed in the event of a power failure, in an emergency type situation, and such is done only at the direct request by someone at the Housing Authority premises. On the occasion of any such service call, Central Louisiana Electric Company bills the Housing Authority of the City of Crowley for its work and the bill, [in] every ... instance, has been paid. However, Central Louisiana Electric Company is not responsible for the maintenance of any part of the electrical distribution system of the housing project owned by the Housing Authority of the City of Crowley and only, on occasion, performs such service calls as above referred to.”
Appearing in the record are the affidavits of Wallace J. Jensen, Sr., and Wallace J. Jensen, Jr. The facts of these affidavits are identical and state as follows:

“That prior to September 10, 1977 he resided at apartment number 257 of the Westwood Apartment Complex located in Crowley, Louisiana. That he resided at this apartment for three (3) years prior to September 10, 1977. That on several occasions prior to September 10, 1977, he saw vehicles from CENTRAL LOUISIANA ELECTRIC COMPANY, INC. perform maintenance on the power lines situated adjacent to petitioner’s apartment. That on these occasions, appearer saw employees of CENTRAL LOUISIANA ELECTRIC COMPANY, INC. perform maintenance on these power lines. ”

The question now arises as to whether CLECO had a duty to protect a person *290 from injury under the circumstances presented.
A very similar set of circumstances was presented to this court in the case of Vital v. Hous. Auth. of City of New Iberia, 360 So.2d 1182 (La.App. 3rd Cir.1978).
In that case, Brian and Nelson Vital were electrocuted when a television antenna they were installing came in contact with an electrical power line. The victims were living in a residence owned by the Housing Authority. The death action was brought against the Housing Authority and CLE-CO. CLECO filed a motion for summary judgment which was granted by the trial court on the basis that CLECO merely sold electricity to the Housing Authority at the Authority’s meter and the Authority distributed the electricity to the dwellings in the project through lines constructed, owned, operated and maintained by the Authority and not by CLECO. The antenna struck one of the lines owned by the Housing Authority.
On appeal the plaintiffs contended that CLECO, through its employees, knew or should have known that there were many television antennae in the project in close proximity of the uninsulated electric lines and that CLECO was negligent in furnishing power when it knew or should have known of these hazardous conditions.
This court affirmed the trial court which granted the motion for summary judgment, stating that:

“mere knowledge by CLECO employees, as stated in plaintiffs’ opposing affidavit, that TV antennas in the project were ‘in close proximity’ to uninsulated electric wires, would not be knowledge of a condition which is clearly an immediate danger of injury sufficient to charge the power company with the duty to de-energize the line. The presence of TV antennas ‘in close proximity’ to uninsulated electric wires is not a hazard unless an antenna contacts a wire. Wherever there is electric power, there is always a certain amount of danger. But the social utility of the electric power must be balanced against its hazard. See the full discussion of these theories of negligence in Allien v. Louisiana Power & Light Company, 202 So.2d 70j (La.App.3rd Cir.1967).

“To hold power companies liable wherever any of their employees know of a condition on a customer’s premises which could possibly result in injury would place an unreasonable burden on them as to conditions which they did not cause, and over which they have no control except to cut off the power.”

This same reasoning applies to the case at hand. The mere knowledge by CLECO of the presence of antennae and tree limbs near the power lines, owned and maintained by the Housing Authority, would not be knowledge of a condition which is clearly an immediate danger of injury sufficient to charge CLECO, the supplier, with the duty to de-energize the line.
The evidence is clear that CLECO was only a supplier. The Housing Authority designed and constructed the power lines within the project and had full responsibility for the maintenance of same. Under the ruling in Vital and the facts of this case, CLECO could not be liable for the injuries received by plaintiffs son. The motion for summary judgment was correctly granted by the trial court.
The case of Meche v. Gulf States Utilities Co., 436 So.2d 538 (La.1983), is distinguishable from the case at hand. In Meche, the defendant was owner of the power line. Also, it had the responsibility for the maintenance of the line. In the case at hand, CLECO had no such responsibility.
For these reasons, the judgment of the trial court is affirmed. The case is remanded for further proceedings according to law and according to the views expressed herein. Costs of this appeal to be paid by appellants.
AFFIRMED AND REMANDED.

. Fitch were the architects and engineers who designed the electrical distribution system for the Housing Authority. Cleveland Construction Company was the contractor who installed the distribution system.